KRISTINA M. DIAZ (SBN 151566)
Kristina.Diaz@roll.com
NANCY FRANCO (SBN 294856)
Nancy.Franco@roll.com
RHONDA STEFFEN (SBN 220490)
Rhonda.Steffen@roll.com
ISABELLE VIDRO (SBN 324273)
Isabelle.Vidro@roll.com
LAUREN FISHELMAN (SBN 317601)
Lauren.Fishelman@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone: (310) 966-8400
Facsimile: (310) 966-8810

Attorneys for Defendant
TELEFLORA LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

LAWRENCE SCHALLERT, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

TELEFLORA LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,

Defendant.

Case No. 2:26-cv-06268-CAS (BFMx)

[Assigned To The Hon. Christina A. Snyder]

**DEFENDANT TELEFLORA LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed concurrently with Request for Judicial Notice; Declaration of Nancy Franco; and (Proposed) Order]

**Date:** **September 14, 2026**
**Time:** **10:00 a.m.**
**Crtrm.:** **8D**

Complaint Filed: June 9, 2026
Trial Date: None Set

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on Monday, September 14, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8D of the above-entitled Court, located at the Felicitas and Gonzalo Mendez United States Courthouse, 350 West 1st Street, Los Angeles, CA, 90012, Defendant Teleflora LLC ("Teleflora") will and hereby does move the Court to dismiss the Complaint of Plaintiff Lawrence Schallert ("Plaintiff"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion").

The grounds for the Motion are as follows: (i) Plaintiff fails to allege a particularized or concrete injury, as necessary to establish Article III standing; (ii) Plaintiff fails to state a claim under California Penal Code section 638.51, the trap and trace provision of the California Invasion of Privacy Act, because Plaintiff does not identify what information the alleged software purportedly captured from him, and because the statute regulates telephone surveillance devices, not websites; and (iii) Plaintiff fails to state a claim for intrusion upon seclusion because Plaintiff has no reasonable expectation of privacy in the technical browsing data alluded to in the Complaint and the alleged conduct is not highly offensive as a matter of law. As none of the deficiencies in the Complaint can be cured by reasonable amendment, Teleflora respectfully moves for dismissal with prejudice.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 on July 27, 2026. *See* Declaration of Nancy Franco.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice, the Declaration of Nancy Franco, the pleadings and records on file in this action, and any oral argument that may be presented at the hearing on the Motion.

DATED: August 5, 2026 ROLL LAW GROUP PC

By: */s/ Nancy Franco*
Nancy Franco
Attorneys for Defendant
TELEFLORA LLC

# TABLE OF CONTENTS

**Page**


MEMORANDUM OF POINTS AND AUTHORITIES .......... 7

I. INTRODUCTION .......... 7

II. BACKGROUND .......... 8

A. The Parties .......... 8

B. Plaintiff's Alleged Visit To Teleflora's Website .......... 8

III. LEGAL STANDARD .......... 9

A. Rule 12(b)(1) .......... 9

B. Rule 12(b)(6) .......... 10

IV. ARGUMENT .......... 10

A. Plaintiff Lacks Article III Standing .......... 10

1. Plaintiff Fails to Allege a Particularized Injury .......... 11

2. Plaintiff Fails To Allege Concrete Harm .......... 13

3. Plaintiff, A Serial Tester, Lacks Standing .......... 16

4. Plaintiff Lacks Standing To Seek Injunctive Relief .......... 17

B. Plaintiff Fails To State A Claim .......... 17

1. The Trap and Trace Claim Fails As A Matter of Law .......... 18

2. Plaintiff Fails To State A Claim for Intrusion Upon Seclusion .......... 20

C. Leave To Amend Would Be Futile .......... 22

V. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 10

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......... 10

*Byars v. Sterling Jewelers, Inc.*
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 16

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983) .......... 17

*Conohan v. Rad Power Bikes Inc.*
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 19

*Daghaly v. Bloomingdales.com, LLC*
2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 15, 19

*Gastelum v. TJX Companies, Inc.*
2024 WL 1601256 (C.D. Cal. Mar. 28, 2024) .......... 22

*Heiting v. FKA Distrib. Co.*
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 13

*Hughes v. Vivint, Inc.*
2024 WL 5179916 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) .......... 12

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*
2021 WL 3878654 (9th Cir. Aug. 31, 2021) .......... 17

*Khamooshi v. Politico LLC*
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 10, 14

*Kishnani v. Royal Caribbean Cruises Ltd.*
2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal dismissed*, WL 2943080 (9th Cir. Oct. 3, 2025) .......... 11, 12, 13, 23

*Maya v. Centex Corp.*
658 F.3d 1060 (9th Cir. 2011) .......... 9

*Mitchener v. CuriosityStream, Inc.*
815 F. Supp. 3d 845 (N.D. Cal. 2025), *appeal dismissed*, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) .......... passim

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) .......... 13, 20, 21

*Price v. Converse, Inc.*
805 F.Supp.3d 1102 (C.D. Cal. 2025) .......... 14

*Raines v. Byrd*
521 U.S. 811 (1997) .......... 10

*Rodriguez v. Autotrader.com, Inc.*
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......... 16

*Saedi v. SPD Swiss Precision Diagnostics GmbH* 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 20, 22

*Schallert v. Laird Superfood, Inc.*
2026 WL 1707585 (C.D. Cal. June 5, 2026) .......... passim

*Schallert v. Orkin LLC*
2025 WL 4332757 (Cal.Super. Dec. 15, 2025) .......... 18, 20

*Schallert v. Palo Alto Networks, Inc.*
2026 WL 754028 (Cal.Super. Mar. 06, 2026) .......... 20, 23

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016), *as revised* (May 24, 2016) .......... 9, 11, 13

*Steinmeyer v. Am. Ass'n of Blood Banks*
715 F. Supp. 3d 1302 (S.D. Cal. 2024) .......... 11

*Torres v. Seatgeek, Inc.*
2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 14, 15, 21

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) .......... 9, 10, 13

*United States v. Forrester*
512 F.3d 500 (9th Cir. 2008) .......... 14

**STATUTES**

California Penal Code § 638.50(c) .......... 18

California Penal Code § 638.51 .......... passim

**OTHER AUTHORITIES**

Black's Law Dictionary (12th ed. 2024) .......... 18

**RULES**

C. D. Cal. L.R. 7-3 .......... 2

Federal Rules of Civil Procedure 12(b)(1) .......... 2, 9, 10

Federal Rules of Civil Procedure 12(b)(6) .......... 2, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This putative class action rests on a flawed premise: that Defendant Teleflora LLC's ("Teleflora") use of standard website analytics transforms its website into an unlawful "trap and trace device" and gives rise to an intrusion upon seclusion claim. It does not. This case is part of the latest unsuccessful wave of California Invasion of Privacy Act ("CIPA") lawsuits, in which serial plaintiffs seek class-wide liability for conduct that CIPA does not, and was never meant to, reach.

Here, Plaintiff Lawrence Schallert ("Plaintiff") seeks to expand California Penal Code section 638.51, the trap and trace provision of CIPA, far beyond its intended scope. The alleged code Plaintiff identifies on Teleflora's website is not a "trap and trace device" within the meaning of the statute. Courts have repeatedly rejected this theory, including in substantially similar actions filed by this same Plaintiff. This lawsuit is but the latest "in a rash of similar actions brought by Plaintiff's counsel, Tauler Smith LLP, alleging violations of Cal. Penal Code § 638.51." *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 848 (N.D. Cal. 2025), *appeal dismissed*, No. 25-4990, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) (identifying 18 similar cases filed by Plaintiff's counsel, Tauler Smith LLP, in California federal court in 2025); *see also Schallert v. Laird Superfood, Inc.*, No. 2:25-CV-12407-SPG-PVC, 2026 WL 1707585, at *2 (C.D. Cal. June 5, 2026) (identifying "35 similar complaints filed by Plaintiff against other companies"). Despite repeated dismissals, Plaintiff again advances the same theory here.

The Complaint fails on three independent grounds. *First*, Plaintiff fails to allege a particularized or concrete injury as required to establish Article III standing. More than half of the Complaint consists of generalized descriptions about what data brokers and websites can do in the abstract, but Plaintiff doesn't provide well-pleaded facts establishing that he suffered an invasion of a legally protected interest. As a serial tester who visits websites to manufacture claims, Plaintiff has no genuine

expectation of privacy and no cognizable injury. *Second*, the software at issue is not plausibly alleged to be a trap and trace device within the meaning of California Penal Code section 638.51. That statute regulates telephone surveillance devices, not websites. *Third*, the intrusion upon seclusion claim fails because no one has a reasonable expectation of privacy in the routine technical browser data that every web browser automatically discloses when visiting a public website, and collecting such data is not "highly offensive" as a matter of law.

As leave to amend would be futile, dismissal should be with prejudice.

## II. BACKGROUND

### A. The Parties

Plaintiff alleges he is a citizen of California. Complaint ("Compl.") ¶ 13. Teleflora operates www.teleflora.com (the "Website"), through which consumers may purchase flowers for delivery. *Id*. at ¶ 1. Teleflora is headquartered in Los Angeles, California. *Id*. at ¶ 14.

### B. Plaintiff's Alleged Visit To Teleflora's Website

Plaintiff alleges that, on October 1, 2025, he visited the Website and "data that reasonably, likely identified him were transmitted to" a third party, LiveRamp. *Id*. at ¶¶ 19, 42. Plaintiff further alleges the LiveRamp code on the Website was "designed to" capture certain information from a visitor's browser, such as IP address and cookie identifiers, to create a "RampID." *Id*. at ¶¶ 37-38. According to the Complaint, the "RampID" is then used to "identify the user, and see the user's online habits." *Id*. at ¶ 40.

Plaintiff alleges he "was subjected to the LiveRamp code" when he visited the Website on October 1, 2025, but he doesn't allege what personal information, if any, he provided to the Website and he makes no specific allegations about what data was purportedly collected from his browser or how it was used to identify him personally, and how any alleged data collection could have violated a protectable privacy interest. *Id*. at ¶ 42. More than half of the Complaint is devoted to

generalized allegations regarding data brokers, "browser fingerprinting," targeted advertising online, and articles relating to data privacy. *Id.* at ¶¶ 22-55. Yet these allegations are untethered to Plaintiff's own experience and have nothing to do with the Website at issue. *Id*. The Complaint does not allege that Plaintiff was actually identified, profiled, targeted with advertising, or tracked across websites. *See* Compl. Rather, Plaintiff relies on generalized assertions about what data brokers and websites purportedly can do, rather than well-pleaded facts establishing what allegedly occurred here. *Id*.

Plaintiff's class allegations are likewise deficient. He defines the proposed class as: "[a]ll persons who, while located in California, visited the Website during the applicable limitations period, and were subjected to the operation of the LiveRamp code running on the Website." *Id.* at ¶ 56.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[U]nder Article III, a federal court may resolve only a real controversy with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424, 141 S. Ct. 2190, 2203 (2021) (citation omitted).

To satisfy Article III's standing requirements, a plaintiff bears the burden to clearly establish that he: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). "To establish injury in fact, a plaintiff must show that he. . . suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 339 (internal quotation marks omitted). "[A] plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and

that the alleged injury suffered is particularized as to him." *Raines v. Byrd*, 521 U.S. 811, 819, 117 S. Ct. 2312, 2317 (1997) (collecting cases). "To demonstrate their personal stake, plaintiffs must be able to sufficiently answer the question: 'What's it to you?'" *TransUnion LLC*, 594 U.S. at 423 (citation omitted).

"In the privacy context, unless the retention of unlawfully obtained or created information amounts to the type of concrete injury recognized by the Supreme Court, it is insufficient to establish standing." *Mitchener*, 815 F.Supp.3d at 849. "To survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179 (N.D. Cal. 2025) (citations omitted).

### B. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). For purposes of a motion to dismiss, a court accepts well-pleaded factual allegations as true, but it need not accept legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (cleaned up). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## IV. ARGUMENT

### A. Plaintiff Lacks Article III Standing

As a threshold matter, the Complaint should be dismissed under Rule 12(b)(1) because Plaintiff fails to allege an injury in fact sufficient to establish Article III standing. "To establish injury in fact, a plaintiff must show that he or she suffered an

invasion of a legally protected interest that is concrete and particularized and 'actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (internal quotation marks omitted). "We have made it clear time and time again that an injury in fact must be both concrete *and* particularized." *Id*. at 340 (emphasis in original).

**1. Plaintiff Fails to Allege a Particularized Injury**

Plaintiff fails the particularization requirement.

"For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id*. at 339. "An injury in law is not an injury in fact." *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *2 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) (dismissing similar complaint filed by Plaintiff's attorneys, Tauler Smith LLP). "To sufficiently allege an injury in fact and survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Mitchener*, 815 F.Supp.3d at 850. "Allegations about what the website *could* capture, as opposed to what it *did* capture from Plaintiff, are insufficient to confer standing." *Schallert v. Laird Superfood*, 2026 WL 1707585, at *5 (emphasis in original). "Plaintiff cannot establish constitutional standing based on conclusory statements. . . ." *Steinmeyer v. Am. Ass'n of Blood Banks*, 715 F. Supp. 3d 1302, 1318 (S.D. Cal. 2024) (granting motion to dismiss).

Here, Plaintiff fails to allege the specific personal information, if any, he provided to the Website and how that data collection purportedly implicates a protectable privacy interest. *See* Compl. The Complaint is impermissibly vague as to all of the details surrounding Plaintiff's alleged use of the Website, including what information, if any, he provided to the Website, and what specific data was purportedly collected from his browser or how it was used to identify him personally. *Id*. Although Plaintiff devotes half of the Complaint to general allegations about how websites and data brokers "can" fingerprint, identify, track,

and target individuals in the abstract, Plaintiff doesn't tie those generalized allegations to himself as required to satisfy Article III standing. Compl. ¶¶ 21-41. The extensive allegations relating to fingerprinting, deanonymization, and targeted advertising are not alleged to apply to Plaintiff personally; they merely describe theoretical harms to hypothetical website visitors. *Id*. Courts considering similarly vague complaints hold such allegations are insufficient to confer Article III standing. *See Kishnani*, 2025 WL 1745726, at *3 (dismissing similar complaint filed by the same Plaintiff's counsel, Tauler Smith LLP, where the plaintiff failed to identify the specific personal information she disclosed that implicated a protectable privacy interest); *accord Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024), *adopted*, No. CV 24-3081-GW-KSX, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) (dismissing materially similar trap and trace claim by the same Plaintiff's counsel, Tauler Smith LLP, for lack of standing where the plaintiff alleged what information "could be captured" by the website, not what was actually collected from her).

In *Schallert v. Laird Superfood*, the Court rejected materially similar allegations set forth by this same Plaintiff. *Schallert v. Laird Superfood*, 2026 WL 1707585. In that case, Plaintiff offered "detailed allegations about tracking technologies generally," but the complaint did not include any information about "what specifically Plaintiff *did* on Defendant's website or what specific information the website captured from *him*." *Id*. at *5 (emphasis in original). The Court found "Plaintiff's allegation that the website took his 'routing, addressing, and signaling information' is conclusory, parroting the language of the statutory definition of a 'trap and trace device' without providing any detail about Plaintiff's actual injury." *Id*. Therefore, the Court held the Plaintiff did not demonstrate any particularized injury. *Id*. The allegations here fail for the same reason.

Plaintiff's own authority confirms the point. *See* Compl. ¶ 69. In *Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D.

Cal. Feb. 3, 2025), a trap and trace action brought by Plaintiff's same counsel, the plaintiff lacked standing where she alleged only that she visited the defendant's website, without alleging "any basic facts from which the Court could infer a concrete injury, like when and how many times she visited the site, what information she provided, what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized." Here, the Complaint suffers from the same defect.

Plaintiff fails to allege a particularized injury and, therefore, lacks standing.

**2. Plaintiff Fails To Allege Concrete Harm**

Plaintiff's allegations also independently fail the concreteness requirement.

"An injury in fact must also be 'concrete.'" *Spokeo*, 578 U.S. at 339. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id*. at 341. "Even where a statute creates a cause of action, courts must independently decide whether a plaintiff has suffered a concrete harm under Article III." *Schallert v. Laird Superfood*, 2026 WL 1707585, at *4 (granting motion to dismiss similar claims made by this same Plaintiff). "No concrete harm, no standing." *TransUnion*, 594 U.S. at 417; *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 795 (9th Cir. 2025) (holding the website visitor lacked Article III standing). For an injury to be "concrete" it must be "real" and not "abstract." *Spokeo*, 578 U.S. at 340. Central to assessing concreteness is whether the alleged harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" such as physical harm, monetary harm, or an intangible harm such as reputational harm. *Id*. at 340-41.

"The mere collection of basic contact information by software, or where the plaintiffs merely visited the website, are not concrete harms." *Mitchener*, 815 F.Supp.3d at 850-51 (internal quotation marks omitted); *accord Kishnani*, 2025 WL 1745726, at *4 (collecting cases). "[I]t is well established in the Ninth Circuit that

there is no legally protected privacy interest in IP addresses." *Mitchener*, 815 F.Supp.3d at 851 (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in. . . the IP addresses of the websites they visit.")); *see also Khamooshi*, 786 F. Supp. 3d at 1177 (granting motion to dismiss for lack of Article III standing where there was no concrete injury for disclosure of browser and device data, IP address, and "other identifying information").

No concrete injury exists here. Instead, in conclusory fashion, Plaintiff alleges that unspecified "data" about his device was collected when he visited the Website. Compl. ¶¶ 19, 21. At most, Plaintiff alleges the collection of routine metadata associated with a visit to a public website, which is insufficient to establish a concrete injury. *See Torres v. Seatgeek, Inc.*, No. 25-CV-07118-LB, 2026 WL 1495202 (N.D. Cal. May 28, 2026). The Complaint is devoid of any allegation that Plaintiff suffered a concrete, real-world harm of the kind that would have been actionable at common law. *See Price v. Converse, Inc.*, 805 F.Supp.3d 1102, 1105 (C.D. Cal. 2025) (finding allegations of data collection via website tracking technology insufficient to establish a concrete injury-in-fact); *see also Schallert v. Laird Superfood*, 2026 WL 1707585, at *5 (dismissing similar claims by this same Plaintiff for failure to allege a concrete injury where he pleaded only what the software could capture, not what it captured from him).

In *Price v. Converse, Inc.*, the Court held similar allegations to Plaintiff's in this case were insufficient to establish a concrete injury as required to establish standing. *Price*, 805 F.Supp.3d 1102. In that case, the plaintiff alleged "the TikTok Software gather[ed] data including device and browser information, geographic information, and referral tracking," which the defendant used "to fingerprint the data and deanonymize [the plaintiff] by matching it" with existing data online. *Id*. at 1105. According to the plaintiff, the foregoing conduct violated the website users' privacy by "turning the anonymous website visitor into the specifically identifiable

recipient of highly personalized and universally unwanted marketing efforts. . . ." *Id*. The Court held Plaintiff's allegations were insufficient to establish a concrete injury and, therefore, the plaintiff failed to meet her burden to establish standing. *Id*.

The Northern District of California's recent decision in *Torres v. Seatgeek, Inc.* is also instructive. There, the Court held the plaintiff lacked Article III standing where he alleged the defendant and third parties collected his IP address, device make/model/OS, browser type, and cookie identifiers, which allowed them to track him across website sessions, other websites, and "across the internet," all while de-anonymizing him by synchronizing his user profiles. *Seatgeek,* 2026 WL 1495202 at *3. The Court concluded that such browsing information did not constitute embarrassing or sensitive data or a highly offensive disclosure and thus was not the type of harm that establishes Article III standing. *Id*. at *3-4. The Court emphasized that the plaintiff did not allege he submitted any personal information, such as creating an account, making a purchase, completing a form, or entering search terms. *Id*. at *4. Where the complaint alleged only the collection of routine metadata associated with a visit to a public website, the Court held the plaintiff failed to allege facts establishing a concrete injury as required for Article III standing. *Id*. at *5. The same is true here.

The Ninth Circuit's decision in *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 WL 5134350, at *1 (9th Cir. Dec. 17, 2024) is directly on point. There, the court affirmed the dismissal of a similar CIPA claim for lack of Article III standing where the plaintiff alleged only that she "visited" the defendant's website and the visit was "transmitted to one or more third parties" but she did not allege that she "made a purchase, entered text, or took any actions other than simply opening the webpage." *Daghaly*, 2024 WL 5134350, at *1. Even inferring from her complaint that her visit to the website was "transmitted to one or more third parties," the Ninth Circuit held, "that transmission cannot *without more* provide the basis for a [CIPA] claim." *Id*. (emphasis added). Here, Plaintiff's bare allegations are the

same in every material respect. He alleges only that he visited the Website once and "data that reasonably, likely identified him were transmitted to" a third party, but does not allege any purchase, text entry, or any other action beyond simply opening the Website. Compl. at ¶¶ 19, 42. Thus, as in *Daghaly*, Plaintiff has not pleaded the concrete injury Article III requires.

Therefore, Plaintiff lacks standing and the Complaint should be dismissed.

**3. Plaintiff, A Serial Tester, Lacks Standing**

Plaintiff lacks standing for the independent reason that he is a serial tester.

Courts routinely dismiss privacy claims for lack of standing where serial plaintiffs actively "seek[] out privacy violations[,]" because such plaintiffs lack any reasonable expectation of privacy when visiting a defendant's website. *See, e.g., Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1-*2 (C.D. Cal. Apr. 4, 2025) (dismissing tester plaintiff's trap and trace claim with prejudice); *accord Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims for lack of standing because the tester plaintiff had no expectation of privacy).

Plaintiff's own litigation history reinforces the absence of any cognizable privacy injury. As the concurrently filed Request for Judicial Notice reflects, Plaintiff is a serial tester who actively seeks out privacy violations. *See* Request for Judicial Notice; *see also Schallert v. Laird Superfood, Inc.*, 2026 WL 1707585, at *2 (identifying "35 similar complaints filed by Plaintiff against other companies"). As Plaintiff seeks out the very "violations" he sues on - visiting websites and then suing over those visits - he had no reasonable expectation of privacy in his visit to the Website and suffered no injury in fact. *Rodriguez*, 2025 WL 1085787, at *1-2 (dismissing tester plaintiff's trap and trace claim with prejudice); *accord Byars*, 2023 WL 2996686, at *4. A tester plaintiff who visits a website "expecting the information to be accessed, recorded, and disclosed. . . cannot claim an injury when [his] expectations were ultimately met." *Rodriguez*, 2025 WL 1085787, at *1.

Plaintiff's serial pursuit of these identical claims confirms that he visited the Website not with any genuine expectation of privacy, but in search of the very conduct he now challenges.

Accordingly, Plaintiff's claims should be dismissed for lack of standing.

**4. Plaintiff Lacks Standing To Seek Injunctive Relief**

Plaintiff separately lacks standing to pursue the injunctive relief he requests.

A plaintiff seeking prospective relief must allege a real and immediate threat of repeated injury; past exposure to allegedly unlawful conduct, without more, does not confer standing to seek an injunction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 95-96, 103 S. Ct. 1660, 1662 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects.") (cleaned up); *see also In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*, No. 20-15742, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) ("To have standing to seek injunctive relief, the threatened injury must be certainly impending to constitute injury in fact and allegations of *possible* future injury are not sufficient.") (emphasis in original) (citation omitted).

Here, Plaintiff merely alleges that he visited the Website once, on October 1, 2025. Compl. ¶ 19. He does not allege that he intends to return to the Website, that he is likely to be subjected to the purported LiveRamp code again, or that he faces any threat of future injury. *See* Compl. Absent such allegations, Plaintiff lacks standing to enjoin Teleflora's conduct, and his request for injunctive relief must be dismissed on this independent ground.

On any of these grounds - no particularized or concrete injury, no reasonable expectation of privacy, and no threat of future injury - Plaintiff lacks Article III standing, and the Complaint must be dismissed under Rule 12(b)(1).

**B. Plaintiff Fails To State A Claim**

The Complaint independently warrants dismissal under Rule 12(b)(6).

**1. The Trap and Trace Claim Fails As A Matter of Law**

The alleged software at issue is not a trap and trace device within the meaning of California Penal Code section 638.51.

A trap and trace device is one that law enforcement attaches to a telephone line to record the incoming "impulses" or electronic signals sent to that phone, such as the incoming phone number, but it does not record the contents of the communications like the words exchanged on the call as a tape recorder would. *See* Cal. Penal Code § 638.50(c) ("'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."); *see also* Trap-and-Trace Device, Black's Law Dictionary (12th ed. 2024) ("An electronic device that police sometimes use to record certain facts about wire and electronic communications, such as dialing, routing, and signaling information, but not the contents of the communications themselves."). CIPA imposes liability and statutory penalties for the installation of a trap and trace device without a court order. *See* Cal. Penal Code § 638.51.

Plaintiff asks this Court to convert a decades-old anti-wiretapping statute, written for telephone surveillance, into a weapon to impose crushing class-wide liability on ordinary businesses for the everyday operation of their websites. The law does not permit it. Other California courts already told this very Plaintiff "no." *See Schallert v. Orkin LLC*, No. 24STCV31244, 2025 WL 4332757 (Cal.Super. Dec. 15, 2025). Likewise, the Court here should do the same.

In *Schallert v. Orkin LLC*, this same Plaintiff brought this same California trap and trace theory against another website operator. The Court held, "California's legal prohibition on using 'trap and trace devices' without a court order - a prohibition enacted by the Legislature after ubiquitous use of the internet, but without any reference to the internet" does not "impose civil liability on websites

that collect 'tracking' information about website visitors." *Schallert v. Orkin LLC*, 2025 WL 4332757 at *1 (granting the defendant's motion for judgment on the pleadings without leave to amend). The Court held the trap and trace statute is limited to devices used to track incoming telephone calls, when considered in light of the statutory structure, legislative history, and regulatory and public policy concerns. *Id*. at *2. The Court found, "[n]owhere in that history is there any indication, whatsoever, that the Legislature as a whole, any member of the Legislature, or any third party, intended 'trap and trace' devices. . . to apply to website tracking software." *Id*. at *4. Plaintiff now brings the identical, already-rejected theory to this Court. It fares no better here.

Defendant anticipates that Plaintiff will point to other court decisions that have applied Section 638.51 to website code. *See* Compl. ¶ 69. Those cases are inapposite. As an initial matter, they rest upon a fundamental misinterpretation of the plain statutory text governing what qualifies as a trap and trace device and fail to grapple with the statutory structure and legislative history that anchor the term "trap and trace device" to telephone lines. Moreover, even assuming, *arguendo*, that Section 638.51 could apply to website code (though, it cannot), each of those cases involved materially different allegations. In each, the claim survived only because the plaintiff alleged, with specificity, the actual capture of identifying data far beyond anything pleaded here. *See e.g.*, *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106 PVC, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (claim survived only because the plaintiff alleged more than a bare website visit). Here, Plaintiff alleges none of this. Instead, he alleges only that he visited the Website once and that unspecified data "reasonably likely" to identify him was transmitted to a third party. Compl. ¶¶ 19, 42. The Ninth Circuit rejected a materially identical pleading in *Daghaly v. Bloomingdales.com*, 2024 WL 5134350, at *1. Whether or not Section 638.51 can ever reach website code, and the better-reasoned authority holds it cannot, Plaintiff has not alleged the deployment of a "trap and trace device"

against him. *Schallert v. Orkin LLC*, 2025 WL 4332757, at *4 (rejecting this same Plaintiff's identical theory on materially indistinguishable allegations); *Schallert v. Palo Alto Networks, Inc.*, No. 25STCV17109, 2026 WL 754028, at *1 (Cal.Super. Mar. 06, 2026) (rejecting this same Plaintiff's identical theory, holding "the deployment of software on a website does not constitute a trap and trace device within the meaning of CIPA").

**2. Plaintiff Fails To State A Claim for Intrusion Upon Seclusion**

Plaintiff fails to plead either element of an intrusion upon seclusion claim and, in any event, there was no actionable "intrusion."

"To show intrusion upon seclusion, a plaintiff must show an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, *of a kind that would be highly offensive to a reasonable man.*" *Popa*, 153 F.4th at 791 (emphasis in original). "To be actionable, the plaintiff must have had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *6 (C.D. Cal. Feb. 27, 2025) (citation omitted).

*First*, Plaintiff does not allege an objectively reasonable expectation of privacy. Without any factual support, Plaintiff parrots the elements of a cause of action by alleging he "had an objectively reasonable expectation of privacy with respect to [his] conversation or exchange with [Teleflora] over the Website." Compl. ¶ 81. Plaintiff alleges that, on October 1, 2025, he visited the Website and "data that reasonably likely identified him were transmitted" to a third party, LiveRamp. *Id*. at ¶¶ 19, 42. Yet Plaintiff does not allege what personal information, if any, was captured, transmitted, or tracked. *See* Compl. At most, Plaintiff alleges the supposed LiveRamp code on the Website was "designed to" capture certain information from a visitor's browser, such as IP address and cookie identifiers, to create a "RampID." *Id*. at ¶¶ 37-38. According to the Complaint, the "RampID" is

then used to "identify the user, and see the user's online habits." *Id*. at ¶ 40. Nonetheless, and despite the speculative chain of events, this is precisely the type of non-sensitive information as to which Courts hold there is no reasonable expectation of privacy. *See Seatgeek*, 2026 WL 1495202, at *4 ("IP addresses, device make/model/OS, browser type, and cookie identifiers - is record information where there is no reasonable expectation of privacy"). Plaintiff voluntarily navigated to a public, commercial website; he had no reasonable expectation of privacy in the routine, technical data his browser openly communicated by doing so.

*Second*, the collection of non-sensitive technical browsing data is not "highly offensive" as a matter of law. In *Popa v. Microsoft Corp.*, the Court held the defendant's tracking software did not infringe on the plaintiff's privacy interests where the software allegedly captured IP address, browser type, device identifiers, website visitors' behavior on the website, and collected data relating to the plaintiff's pet-store preferences and her address. *Popa*, 153 F.4th 784. The plaintiff did not identify any "embarrassing, invasive, or otherwise private information" collected by the defendant. *Id*. at 791. The plaintiff did not allege "how the tracking of her interactions with the. . . website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." *Id*. Rather, the Court found "the monitoring of [the plaintiff's] interactions with [the defendant's] website [was] most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id*.

Here, as in *Popa*, Plaintiff did not identify any embarrassing, invasive, or otherwise private information collected by Teleflora. *See* Compl. Plaintiff merely alleges unspecified "data that reasonably likely identified him [was] transmitted" and "[t]he intrusion. . . would be highly offensive to a reasonable person." Compl. ¶¶ 19, 84. This falls far short of the egregious conduct the tort requires. *See Seatgeek*, 2026 WL 1495202, at *3 (collection of IP address and other information,

which allowed the defendant and third parties to track him across website sessions, other websites, and "across the internet," did not amount to highly offensive disclosure).

*Third*, Teleflora cannot "intrude" into communications it was intended to receive. Plaintiff alleges Teleflora "intruded" into his visit to the Website. Compl. ¶ 79. Yet where a plaintiff voluntarily directs information to the defendant, there is no actionable intrusion. *See Saedi*, 2025 WL 1141168, at *8 (holding the website user failed to plead a claim for intrusion upon seclusion against website operator "[b]ecause one cannot logically intrude into communications to which they are a party"). In *Saedi*, the plaintiff alleged that the defendant website operator deployed tracking technology to duplicate and transmit her communications with the website - including sensitive medical and identifying information she intended only the defendant to receive - to third parties. *Id*. at *2. The Court nonetheless concluded there can be no actionable "intrusion" for purposes of an invasion of privacy claim where a plaintiff voluntarily provides information to a defendant. *Id*. at *6. Similarly, here, Teleflora was the intended recipient of Plaintiff's communications with its Website and, therefore, there is no actionable "intrusion."

The second cause of action should be dismissed for failure to state a claim.

**C. Leave To Amend Would Be Futile**

Dismissal should be without leave to amend because no reasonable amendment can cure the foregoing defects.

"[A] Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility." *Gastelum v. TJX Companies, Inc.*, No. CV 23-8905-JFW(AJRX), 2024 WL 1601256, at *2 (C.D. Cal. Mar. 28, 2024).

Leave to amend should be denied because Plaintiff's claims are legally defective and cannot be cured by reasonable amendment. *See Mitchener*, 815 F. Supp. 3d at 852 (dismissing similar complaint filed by the same Plaintiff's counsel,

Tauler Smith LLP); *accord Kishnani*, 2025 WL 1745726, at *5 (granting motion to dismiss similar claims and discussing "the futility of Plaintiff's suit (and the myriad identical cases Plaintiff's counsel [Tauler Smith LLP] has filed in both federal and state courts"); *accord Schallert v. Palo Alto Networks, Inc.*, 2026 WL 754028, at *3 (dismissing similar claims made by this same Plaintiff without leave to amend because he did not satisfy his burden to show how he could plausibly amend the complaint to state a claim).

## V. CONCLUSION

For the foregoing reasons, Teleflora respectfully requests the Court to grant its Motion and dismiss the Complaint in its entirety with prejudice.

DATED: August 5, 2026 ROLL LAW GROUP PC

By: */s/ Nancy Franco*
Nancy Franco
Attorneys for Defendant
TELEFLORA LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Teleflora LLC, certifies that this brief contains 5,490 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 5, 2026 ROLL LAW GROUP PC

By: */s/ Nancy Franco*
Nancy Franco
Attorneys for Defendant
TELEFLORA LLC