J. Evan Shapiro (SBN 218481)
eshapiro@taulersmith.com
Camrie Ventry (SBN 355853)
cventry@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff Lawrence Schallert*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE SCHALLERT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>TELEFLORA, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:26-CV-06268-CAS-BFM<br><br>*[Assigned to Hon. U.S.D.J. Christina A. Snyder]*<br><br>**PLAINTIFF LAWRENCE SCHALLERT'S OPPOSITION TO DEFENDANT TELEFLORA, LLC'S MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 14, 2026<br>Time: 10:00 a.m.<br>Courtroom: 8D<br><br>Action Filed: June 9, 2026<br>Trial Date: None set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ 3

I. INTRODUCTION ........ 6

II. ALLEGATIONS OF THE COMPLAINT ........ 8

III. RELEVANT LEGAL STANDARDS ........ 11

IV. THE COURT SHOULD DENY THE MOTION TO DISMISS ........ 12

A. Plaintiff Has Article III Standing to Bring His Claims ........ 12

1. The Complaint Alleges Concrete, Particularized Injuries In Fact to Plaintiff That Give Rise to Standing. ........ 12

2. Plaintiff's Other Trap and Trace Lawsuits Do Not Defeat Standing, Particularly at the Pleading State on a Rule 12(b) Motion ........ 17

B. The Complaint Sufficiently States Claims Against Defendant ........ 18

1. The LiveRamp code is a Trap and Trace Device Within Cal. Penal Code § 638.50(c) That Violates Cal. Penal Code § 638.51 ........ 18

2. The Complaint States a Claim For Intrusion Upon Seclusion ........ 20

V. CONCLUSION ........ 22

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE ........ 23

## TABLE OF AUTHORITIES

Cases

*Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908 (C.D. Cal. Mar. 25, 2026) .......... 13, 15, 16

*Anschutz Ent. Grp.*, 2026 U.S. Dist. LEXIS 101782 (C.D. Cal. May 5, 2026) .......... 17

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .......... 11

*Biglang-Awa-Castro v. SBE Restaurant Group, LLC*, 25VECV03590, 2026 Cal. Super. LEXIS 25177 (L.A. Co. Super. Ct. Apr. 16, 2026) .......... 18

*Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 LX 229530 (N.D. Cal. Apr. 29, 2026) .......... 20

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) .......... 11

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 13, 15

*Cantu v. Nintendo of Am., Inc.*, No. 2:26-cv-01520-SPG-CTS, 2026 LX 429461 (C.D. Cal. Aug. 17, 2026) .......... 17

*Casillas v. Lucky Opco LLC,* 25STCV03961, 2026 Cal. Super. LEXIS 24132 (L.A. Co. Super. Ct. Jan. 5, 2026) .......... 18

*Casillas v. Six Flags Ent. Corp*., 812 F. Supp. 3d 1016 (C.D. Cal. 2025) .......... 13, 18, 20, 21

*Conohan v. Rad* Power *Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 19

*Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 U.S. App. LEXIS 31929 (9th Cir. Dec. 17, 2024) .......... 16, 20

*De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 LX 591947 (N.D. Cal. Dec. 22, 2025) .......... 13

*Deivaprakash v. Conde Nast Digit.*, No. 25-CV-04021-RFL, 2025 U.S. Dist. LEXIS 193968 (N.D. Cal. Sept. 30, 2025) .......... 13

*Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 LX 187347 (N.D. Cal. Apr. 21, 2026) .......... 13, 19

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) .......... 12

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 11, 14

*Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) .......... 19

*Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782 (C.D. Cal. May 5, 2026) .......... 13, 15

*Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025) .......... 18

*Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 LX 11956 (N.D. Cal. Jan. 29, 2026) .......... 13, 15

*Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) ..... 19

*In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589 (9th Cir. 2020)..........7, 13, 14

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 21

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3rd Cir. 2019) .......... 14

*Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303 (S.D. Cal. Mar. 12, 2026) .......... 13, 15

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .......... 11

*Krzyzek v. Openx Techs., Inc.*, No. 25-CV-5588-SI, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) ..........13, 15, 20, 21

*Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675 (C.D. Cal. Dec. 4, 2025) .......... 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 12

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 19

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024) .......... 19

*Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) .......... 14

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744 (N.D. Cal. Nov. 24, 2025) .......... 13, 15

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. Aug. 25, 2025) ..........12, 14, 16

*Price v. Headspace, Inc.*, 2025 Cal. Super. LEXIS 27951 (L.A. Super Ct. Apr. 1, 2025) .......... 19

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938 (9th Cir. 2014) .......... 19

*Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025)... 19

*Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDX, 2025 U.S. Dist. LEXIS 264091, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 17

*Sanchez v. Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460 (L.A. Super. Ct. Feb. 28, 2025).......... 19

*Santoro v. Lulu & Georgia, Inc.*, 25STCV11722, 2025 Cal. Super. LEXIS 84529 (L.A. Co. Super. Ct. Nov. 21, 2025) .......... 18

*Scarlett v. Future US, LLC,* CGC-25-621912, 2025 Cal. Super. LEXIS 56166 (S.F. Co. Super. Ct. Sept. 5, 2025).......... 18

*Schallert v. RocketGenius*, 25STCV35081, 2026 Cal. Super. LEXIS 25177 (L.A. Co. Super. Ct. March 24, 2026) .......... 18

*Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 LX 445234 (N.D. Cal. Oct. 16, 2025) .......... 20

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. October 21, 2024) .......... 19

*Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) .......... 13, 15, 19

*Shah v. Politico LLC*, No. 25-cv-05213-NW, 2026 LX 57090, at *11 n.2 (N.D. Cal. Feb. 6, 2026) .......... 18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 12

*U.S. Dep't of Justice v. Reporters Committee,* 489 U.S. 749 (1989) .......... 15

*United States v. Plains All Am. Pipeline L.P.,* No. 2:26-cv-05242-SVW-SSC, 2026 LX 427245 (C.D. Cal. Aug. 19, 2026) .......... 19

*Valenzuela v. Intersystems Corp.*, 2025 Cal. Super. LEXIS 42550 (Orange Co. Superior Ct. Aug. 4, 2025) .......... 19

*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) .......... 13, 15

*Wolf v. Strankman*, 392 F.3d 358 (9th Cir. 2004) .......... 11

*Zhizhi Xu v. Reuters News & Media, Inc.*, 25CV459918, 2025 Cal. Super. LEXIS 76169 (Santa Clara Co. Super Ct. Oct. 24, 2025) .......... 18

<u>Statutes</u>

Cal. Penal Code § 629.51(a)(2) .......... 11

Cal. Penal Code § 638.50(c) .......... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Lawrence Schallert ("Plaintiff") opposes Defendant Teleflora LLC's ("Teleflora" or "Defendant") Motion to Dismiss the Complaint (ECF No. 16) (the "Motion" or "Mot").

Teleflora operates the website found at www.teleflora.com (the "Website"), which sells floral products on demand for delivery to individuals located in California. The Complaint alleges that Teleflora uses the tracking software of a California-registered data broker LiveRamp (the "LiveRamp code") to identify visitors to the Website to target them with marketing. It also alleges that LiveRamp uses the data about visitors, their visits, and non-personal data that identifies them, to create or enhance detailed profiles about them, track their ongoing internet browsing across the internet, and to sell the data and profiles. All of this occurs without Defendant providing the visitor with any opportunity to reject such identification and tracking. This is not a case about harmless collection or transmission of IP addresses, or browser/device settings. It is about ongoing tracking of individuals browsing the internet, the creation or enhancement of behavioral profiles of such individuals – non-consensual pernicious activity that is proscribed under California law.

Plaintiff visited the Website on October 1, 2025. When he did, he was subjected to the LiveRamp code, which identified him to LiveRamp. Plaintiff, on his own behalf and on behalf of a class of visitors to the Website similarly situated to him, asserts that the Website's deployment of the LiveRamp code violates California Penal Code §§ 638.50-51 (California's "Trap and Trace Law"), a provision of the California Invasion of Privacy Act, Pen. Code §§ 630 *et seq.* ("CIPA"). Further, he asserts that deployment of the LiveRamp code causes an intrusion upon seclusion under California common law – an intrusion ***by LiveRamp*** into the communication between visitors including him and Teleflora/the Website.

The Court should deny the Motion because Teleflora's arguments are unavailing.

First, Plaintiff has Article III standing to bring his trap and trace and intrusion upon seclusion claims. He alleges that he was subjected to software on Teleflora's Website that caused him to be identified by LiveRamp for commercial exploitation, caused non-personal data that identifies him to be used by third parties in ways he cannot control, and facilitated the tracking of his future internet browsing. These results undoubtedly enabled LiveRamp to compile a profile on Plaintiff that LiveRamp has exploited commercially, perhaps including its sale. Plaintiff's alleged injuries include the chilling of his sense of freedom in navigating the internet anonymously, and the diminution in the value of data about him to him – data that can be exploited by third parties with whom he has never transacted.

There is ample authority upon which to conclude that these allegations establish Article III standing, including the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 598-599 (9th Cir. 2020). A growing number of district judges in the Northern, Central and Southern Districts of California have, applying *In re Facebook* and/or a U.S. Supreme Court precedent, have found that an individual's loss of control over data that can identify her, and can be used in connection with a pervasive profiling and tracking ecosystem, represents a concrete injury in fact establishing Article III standing in website software data privacy cases such as this.

Teleflora's insistence that all Plaintiff is alleging is the collection of Plaintiff's browser and device type, and similar non-personal data points, should be rejected in light of ***Plaintiff's actual claims***. The Complaint includes far more disturbing allegations about the ability of data brokers to use such things to identify individuals, and the highly offensive tracking, profiling and data sales perpetrated by data brokers like LiveRamp. Such profiling, tracking and sales – enabled by website operators like Teleflora – are inconsistent with, and highly offensive to, our society's notions of individual privacy.

Second, Plaintiff has stated a claim for violation of Cal. Penal Code § 638.51, California's "trap and trace" prohibition. The vast majority of California federal district courts, and many California state courts, have found that this broadly worded statute applies to communications via websites and the internet. Further, counter to Teleflora's

arguments, the specific factual allegations here are materially identical or similar to those found in decisions affirming the statute's reach into internet technology.

Third, Plaintiff has stated a claim for intrusion upon seclusion. As is apparent from the Complaint Plaintiff has alleged that Teleflora facilitated an intrusion into Plaintiff's communications with Teleflora/the Website ***by LiveRamp*** – not by Teleflora itself. Although certain allegations in the Complaint could have been worded more artfully to express this, the Complaint can be read as asserting Teleflora's liability for the intrusion as a party causing the intrusion by installing LiveRamp code on the Website. If the Court deems it necessary, Plaintiff seeks leave to amend the complaint to allege aiding and abetting liability on Teleflora's part with respect to this claim.

Moreover, there is ample caselaw supporting Plaintiff's theory that he had a reasonable expectation of privacy that a third party would not be privy to his interactions with the Website for the purpose of identifying and profiling him. Further, at the pleading stage, whether the type of profiling and tracking described in the Complaint would be "highly offensive" to a "reasonable person" is a factual matter that needs development. Again, Teleflora's recasting the Complaint as making narrow assertions about "the collection of non-sensitive technical browsing information," (Mot. (ECF No. 16), at 21:9-10) is unavailing. Plaintiff's intrusion upon seclusion claim is based on far more disturbing allegations.

For these reasons, and those set forth below, the Court should deny the Motion in its entirety.

## II. ALLEGATIONS OF THE COMPLAINT

The Complaint alleges that Defendant operates an interactive commercial website selling floral products to consumers, found at www.teleflora.com (the "Website"). Cplt. (ECF No. 1), ¶¶ 1, 9. The Website deploys software or code supplied by data broker LiveRamp (the "LiveRamp code "). *Id.*, ¶¶ 2, 11, 19-21. The Complaint further alleges that Plaintiff was subjected to the LiveRamp code when he visited the Website on October 1, 2025. Plaintiff had no knowledge of, and did not consent to, the operation of the

LiveRamp code on him and his device; nor had Defendant obtained a court order or any other authorization to use the LiveRamp code at the time. *See id.*, ¶¶ 5, 70-71.

The Complaint further alleges that during his visit, Plaintiff reasonably expected that his interaction with the Website would occur between his device and Defendant; he did not expect that information generated through the interaction would be disclosed to unrelated third parties. *Id.*, ¶¶ 13, 78, 80-81. However, as Plaintiff's browser requested and loaded webpages on the Website, and unknown to Plaintiff, the LiveRamp code caused the webpages Plaintiff visited on the Website, along with information about him, his location, his browser and his device that can be used to identify him, to be transmitted to LiveRamp. *Id.*, ¶¶ 2, 37-42.

The Complaint explains that the LiveRamp code identifies individuals through browser fingerprinting – a process by technical data points about an individual's device and browser are transmitted to a data broker such as LiveRamp, along with geolocation data and a website visitor's activities on websites. *Id.*, ¶¶ 21, 23-24, 37, 39-41. It further explains that the LiveRamp code that acted upon Plaintiff includes the assignment of a permanent LiveRamp "RampID" aimed at "persistently track[ing] an individual across thousands of websites." *Id.*, ¶ 40. (These are placed on the individual visitor's browser. *Id.*) "The RampID, and the data associated with it, is widely shared [by LiveRamp] with dozens of ad tech partners so that all parties who pay for it can identify the user, and see the user's online habits." *Id.*

LiveRamp's identification of Website visitors including Plaintiff "works across devices; in other words, the LiveRamp code can inform websites using it that the same account or person has accessed the website from different devices." *Id.*, ¶ 41 (referencing LiveRamp's own statements about its software's capabilities). Further, the Complaint explains that as a result of the identification and tracking process initiated by Defendant's use of the LiveRamp code, LiveRamp was enabled to build or enhance its behavioral profile of Plaintiff, and members of the putative Class in this action, and to track their future internet browsing in ways that would be highly offensive to a reasonable person. *Id.*,

¶¶ 2, 29, 55, 73, 85.

The Complaint alleges that the identification and ongoing tracking of Website visitors including Plaintiff benefitted Defendant by facilitating the targeting of specific individuals for Defendant's marketing. *Id.*, ¶ 4. It also alleges that LiveRamp profits from these activities because they enhance LiveRamp's profiles on the visitors, which it is free to market and sell. *Id.*, ¶¶ 19, 29, 45.

The Complaint alleges that, "type of visitor data transmitted via the Website to LiveRamp has economic value." *Id.*, ¶ 52. Further, "[t]he value of this data – that of Plaintiff as well as that of members of the Class on whose behalf Plaintiff has filed this action – was diminished by Defendant's deployment of the LiveRamp code on the Website." *Id.*

With respect to Plaintiff's intrusion upon seclusion claim, the Complaint alleges that Plaintiff (and members of the putative Class) had objectively reasonably expectations of privacy regarding their interactions and communications with Teleflora and the Website, and that by deploying the LiveRamp code, Defendant intentionally ***caused an intrusion*** into those interactions and communications ***by LiveRamp***. *Id.*, ¶¶ 77-81. This all occurred without the consent of Plaintiff and members of the putative Class. *Id.*, ¶ 80. The deployment was intentional and perpetrated for Defendant's economic benefit. *Id.*, ¶ 82. Further, the intrusion described in the Complaint would be highly offensive to a reasonable person because it "allowed LiveRamp to identify, profile and track (on an ongoing basis) Plaintiff and Class members, and to sell their information." *Id.*, ¶ 79.

The Complaint asserts that Defendant's actions, detailed above constitutes a violation of Cal. Penal Code § 638.51. Section 638.51 prohibits the installation or use of a "trap and trace device," as defined in Cal. Penal Code § 638.50(c), without a court order. Section 638.50(c) defines "trap and trace device" as

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to

identify the source of a wire or electronic communication, but not the contents of a communication.

Here, the Complaint asserts that the LiveRamp code meets the above definition because it captures information about Plaintiff, his location, his device and his browser contained on "electronic impulses" that are "incoming" to third parties including LiveRamp. Cplt. (ECF No. 1), ¶¶ 65-68. Moreover, the information constitutes "routing, addressing or signaling information" that is "reasonably likely to identify" Plaintiff and his device as the source of electronic communications. *Id.* The electronic communications in question are the data and/or signals exchanged between Plaintiff's device, on the one hand, and the Website – or the LiveRamp infrastructure to which the LiveRamp code directs the information about Plaintiff and his visit – on the other hand, during Plaintiff's visit.[1]

## III. RELEVANT LEGAL STANDARDS

A facial attack to the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is confined to the allegations in the complaint. *Wolf v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested." *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276, at *8 (N.D. Cal. Aug. 29, 2025) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas*

---

[1] The term "electronic communication" as used in Cal. Penal Code § 638.50(c) (definition of "trap and trace device") is defined in pertinent part as "any transfer of signs, signals, [ ] data, or intelligence of any nature [ ] by a wire, radio [or] electromagnetic [. . .] system." Cal. Penal Code § 629.51(a)(2).

*Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. THE COURT SHOULD DENY THE MOTION TO DISMISS

### A. Plaintiff has Article III Standing to Bring His Claims.

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Here, contrary to Defendant's contentions, the Complaint sufficiently alleges that he has suffered injuries in fact meeting the requirements of *TransUnion*.

#### 1. The Complaint Alleges Concrete, Particularized Injuries In Fact to Plaintiff That Give Rise to Standing.

The Complaint alleges that Defendant's subjecting Plaintiff to the LiveRamp code both violated his privacy and caused him particularized, concrete injuries. The injuries include the following: Plaintiff's loss of control over information gathered during his visit to the Website, including non-personal data that identifies or de-anonymizes him while browsing on the internet; the diminution in the value of such data, and his browsing identity; the creation or enhancement of a behavioral profile of him by LiveRamp; and, "the chilling effect on [his] free online expression and inquiry due to the ongoing tracking of his internet browsing by [LiveRamp and other] third parties enabled by Defendant's conduct." Complaint (ECF No. 1), ¶ 73.[2]

Defendant contends that under *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. Aug. 25, 2025), and other cases, Plaintiff's failure to allege that that the LiveRamp code collected or disseminated any specific "embarrassing, invasive or otherwise private information" from his October 2025 Website visit is fatal to Plaintiff's Article III standing. ***Not so.***

[2] Thus the Complaint alleges that Plaintiff's injuries are traceable to Teleflora – specifically, Teleflora's installation and deployment of the LiveRamp code on the Website.

Relying on the underlying facts of, and the Court's standing holding, in the Ninth Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 598-599 (9th Cir. 2020) (*"In re Facebook"*), a growing number of district courts have found standing where, as here, plaintiffs allege privacy harms caused by highly invasive tracking software such as the LiveRamp code – even where their complaints do not identify specific "embarrassing, invasive or otherwise private information" that was collected or disseminated. *See, e.g., Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782, at *8-10 (C.D. Cal. May 5, 2026); *Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 LX 187347, at *4 (N.D. Cal. Apr. 21, 2026); *Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908, at *16-21 (C.D. Cal. Mar. 25, 2026); *Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303, at *14-16 (S.D. Cal. Mar. 12, 2026); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 LX 11956, at *2-4 (N.D. Cal. Jan. 29, 2026); *Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193, at *3 (N.D. Cal. Jan. 27, 2026); *Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 862-64 (N.D. Cal. Jan. 27, 2026); *Hassid v. Alex and Ani, LLC*, No. CV 25-0679 FMO (JCx), 2026 U.S. Dist. LEXIS 11238, at *5-7 (Jan. 20, 2026); *De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 LX 591947, at *4 (N.D. Cal. Dec. 22, 2025); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1033 (C.D. Cal. 2025); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744, at *2, *22 (N.D. Cal. Nov. 24, 2025); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. Nov. 18, 2025); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, 2025 WL 2939229, at *10 (N.D. Cal. Oct. 16, 2025); *Deivaprakash v. Conde Nast Digit.*, No. 25-CV-04021-RFL, 2025 U.S. Dist. LEXIS 193968, at *3-5 (N.D. Cal. Sept. 30, 2025). Notably, each of these cases was decided ***after Popa was issued in August 2025.***

In *In re Facebook*, the Ninth Circuit found that Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." 956 F.3d at 598. The Court further noted

that "[a]s alleged in the complaint, this tracking occurred 'no matter how sensitive' or personal users' browsing histories were." *Id.* The *Facebook* Court concluded that such surreptitious "unauthorized exploration" of someone's private life and information constituted a cognizable and concrete Article III injury:

> Here, Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm ***or a material risk of harm*** to their interest in controlling their personal information. As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information.

*Id.* (emphasis added).[3] Similarly, the Second and Third Circuits have determined that plaintiffs sufficiently alleged concrete, particularized injuries in fact for purposes of Article III and statutory standing where they alleged that defendants had caused monitoring of plaintiffs' web browsing across multiple websites, the building of detailed profiles based on plaintiffs' internet activity, and the related dissemination of such browsing data – precisely the type of activity Plaintiff alleges here. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017).

District judges of the Central, Southern and Northern Districts of California, relying

---

[3] Notably, under *Popa*, 153 F.4th at 794, the holding in *In re Facebook*, as tethered to the factual allegations made in that case, still represents good law:

> More important, we need not revisit *Eichenberger* and *In re Facebook* in reaching our decision today. Despite the broad statements made therein, those decisions still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes. *See In re Facebook*, 956 F.3d at 598 ("Plaintiffs alleged that Facebook continued to collect their data after they had logged off the social media platform, in order to receive and compile their personally identifiable browsing history. As alleged in the complaint, this tracking occurred 'no matter how sensitive' or personal users' browsing histories were.")

153 F.4th at 794. *See also Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 864 (N.D. Cal. 2025) (holding that "the Ninth Circuit has not disavowed *[In re] Facebook* in the wake of *TransUnion*").

in part on *In re Facebook*, have rejected Defendant's position that in all data privacy/tracking software cases, the only basis for standing is an allegation that specific embarrassing or highly sensitive information about an individual or individuals was collected or transmitted. Rather, a significant number of them have found that Article III standing can be based upon the highly invasive, extensive and enduring nature of today's tracking software – software that operates across a large number of websites and disseminates information broadly. *See, e.g. Anschutz Ent. Grp.*, 2026 U.S. Dist. LEXIS 101782, at *8-10; *NCAA*, 2026 LX 158908, at *16-21; *Skullcandy*, 2026 LX 101303, at *14-16; *iHeartMedia*, 2026 LX 11956, at *2-4; *MyFitnessPal*, 2026 U.S. Dist. LEXIS 15193, at *3; *OpenX Techs.*, 817 F. Supp. 3d at 862-64; *Alex and Ani, LLC*, 2026 U.S. Dist. LEXIS 11238, at *5-7; *Inspire Brands*, 2025 LX 591947, at *4; *Pemberton*, 2025 LX 598744, at *2, *22; *Camplisson*, 809 F. Supp. 3d at 1106; *Dollar Tree Stores*, 2025 LX 466484, at *28-29.

Some of the above-cited cases rely also upon *U.S. Dep't of Justice v. Reporters Committee,* 489 U.S. 749, 763 (1989), in which the Supreme Court held that the right to privacy "encompass[es] the individual's control of information concerning his or her person." *See, e.g., NCAA*, 2026 LX 158908, at *16-17; *iHeartMedia*, 2026 LX 11956, at *2-3; *OpenX Techs*, 817 F. Supp. 3d at 862-63. Several of the district court decisions cited here identify the ***plaintiffs' loss of control over information relating to them disseminated to third parties through contemporary tracking software*** as a concrete injury grounding Article III standing. *See, e.g., Anschutz Ent. Grp.*, 2025 U.S. Dist. LEXIS 101782, at *9-*10; *NCAA*, 2026 LX 158908, at *18-19; *iHeartMedia, Inc.*, 2026 LX 11956, at *4.

Importantly, in one of these decisions, *NCAA*, the court found in light of their allegations of pervasive and extensive cross-site tracking, plaintiffs were not required to provide the "level of detail" concerning disclosed data that the defendants demanded on a motion to dismiss. 2026 LX 158908, at *20-21 (The court also found that it was "inappropriate to resolve at the pleading stage" whether certain information disseminated through tracking software "was sufficiently offensive to be held actionable at common

law." *Id.*)

Defendant attempts to distract the Court with references to "IP addresses," "browser type," and "routine metadata" *See* Mot. (ECF No. 16), at 14:3-6, 14:8-13, 20:25-28, 21:2-6. The Complaint does not allege that the dissemination of such seemingly non-personal data alone represents an injury in fact. Rather, such information is referenced by Plaintiff ***because it facilitates a browser "fingerprinting" process that enables data brokers such as LiveRamp to identify individuals, build behavioral profiles of them and track them across a large number of websites***. Under the line of tracking software cases applying *In re Facebook* and *Reporters Committee* cited above, allegations about the nature, actions and capabilities of the tracking software at issue were found to be sufficient to establish Article III standing.

Finally, Defendant's reliance on *Popa*, and *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 U.S. App. LEXIS 31929 (9th Cir. Dec. 17, 2024) (*see* Mot., at 13-16) is unfounded. *Popa* involved a different type of software – session replay technology. In *Popa*, there was no allegation that session replay technology initiated ongoing tracking of the plaintiff, or the creation or enhancement of a detailed, behavioral profile of her that was subject to sale by a data broker like LiveRamp. *Daghaly* is an ***unreported*** decision about a claim of eavesdropping/interception that was alleged to have violated ***a different CIPA provision, Cal. Penal Code § 631(a)***. Teleflora misrepresents the *Daghaly* decision by asserting that it affirmed dismissal of "a similar CIPA claim" and suggesting that the Court's discussion of the transmission of data to third parties in that case "cannot without more provide the basis of a CIPA claim" related to Article III standing. *See* Mot. (ECF No. 16), at 15:25-28 (quoting *Daghaly*, 2024 U.S. App. LEXIS 31929, at *3). *Daghaly* turned on the determination by the district court that plaintiff there had not sufficiently alleged that any ***contents of a communication*** had been received by third parties. *See* 2024 U.S. App. LEXIS 31929, at *2-*3. Plaintiff is not required to allege this in this "trap and trace" action under Cal. Penal Code § 638.51.

### 2. Plaintiff's Other Trap and Trace Lawsuits Do Not Defeat Standing, Particularly at the Pleading Stage on a Rule 12(b) Motion.

Teleflora contends that Plaintiff is a "tester" of websites for tracking software, and on such ground lacks Article III standing in this action. *See* Mot. (ECF No. 16) at 16:7-17:4. However, the Complaint does not allege that Plaintiff visited Teleflora's Website as a "serial tester." The CIPA complaints filed by Plaintiff submitted by Defendant for judicial notice do not establish "tester" status. Nor has Defendant submitted any declaration establishing such status. Accordingly, for purposes of the Motion, the Court may only draw from any complaints it decides to judicially notice that Plaintiff has filed a certain number of actions based on allegations of CIPA violations.

In any event, the "mere status as a tester does not foreclose a plaintiff from establishing Article III standing to sue." *Cantu v. Nintendo of Am., Inc.*, No. 2:26-cv-01520-SPG-CTS, 2026 LX 429461, at *9 (C.D. Cal. Aug. 17, 2026) (citing *Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDX, 2025 U.S. Dist. LEXIS 264091, 2025 WL 3692144, at *6 (C.D. Cal. Dec. 15, 2025); *Anschutz Ent. Grp.*, 2026 U.S. Dist. LEXIS 101782, at *4 (C.D. Cal. May 5, 2026)). Further, as the court in *Anschutz Ent. Grp.* observed, "there may be injury where a plaintiff is 'genuinely interested' in visiting a website and is 'unaware of the secret spyware being used to surveil visitors and monetize personal information.' " *Id.*, at *12 (quoting *Rodriguez v. Brushfire Recs.*, No. 2:25-CV-09797-CAS-PDX, 2025 U.S. Dist. LEXIS 264091, 2025 WL 3692144 at *6 (C.D. Cal. Dec. 15, 2025)).

The Court can conclude based on the Complaint ***neither*** that Plaintiff ***was uninterested*** in viewing the Website, ***nor*** that ***he was aware*** of the LiveRamp code deployed on the Website and how it operates. Questions of fact concerning the implication of Plaintiff's filing of lawsuits against numerous other websites deploying third-party tracking software when he visited them are not suitable for resolution at the pleading stage, on a motion to dismiss for lack of standing under Fed. R. Civ. P. 12(b)(1). *See, e.g.*, *Vishal*

*Shah v. Politico LLC*, No. 25-cv-05213-NW, 2026 LX 57090, at *11 n.2 (N.D. Cal. Feb. 6, 2026) (whether plaintiff was a "tester" for purposes of Article III standing or whether he "sought out sites that would invade his privacy," were issues of fact "unsuitable as [ ] ground[s] for dismissal.").

**B. The Complaint Sufficiently States Claims Against Defendant.**

Plaintiff has sufficiently alleged that Defendant violated § 638.51 and committed the tort of intrusion upon seclusion. None of Defendant's arguments asserting that Plaintiff has failed to state a cause of action withstand basic scrutiny.

**1. The LiveRamp code is a Trap and Trace Device Within Cal. Penal Code § 638.50(c) That Violates Cal. Penal Code § 638.51.**

Software or code running on websites that "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication" constitutes a trap and trace device under §§ 638.50-51. *See, e.g., Biglang-Awa-Castro v. SBE Restaurant Group, LLC*, 25VECV03590, 2026 Cal. Super. LEXIS 29752, at *3-4 (L.A. Co. Super. Ct. Apr. 16, 2026); *Schallert v. RocketGenius*, 25STCV35081, 2026 Cal. Super. LEXIS 25177, at *3-4 (L.A. Co. Super. Ct. March 24, 2026); *Hassid v. Alex & Ani, LLC*, 2026 U.S. Dist. LEXIS 11238, at *4-7 (C.D. Cal. Jan. 20, 2026); *Casillas v. Lucky Opco LLC,* 25STCV03961, 2026 Cal. Super. LEXIS 24132, at *5-6 (L.A. Co. Super. Ct. Jan. 5, 2026); *Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100, at *21-22 (C.D. Cal. Dec. 15, 2025); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *39-42 (C.D. Cal. Dec. 4, 2025); *Santoro v. Lulu & Georgia, Inc.*, 25STCV11722, 2025 Cal. Super. LEXIS 84529, at *8-9 (L.A. Co. Super. Ct. Nov. 21, 2025); *Zhizhi Xu v. Reuters News & Media, Inc.*, 25CV459918, 2025 Cal. Super. LEXIS 76169, at *8-10 (Santa Clara Co. Super Ct. Oct. 24, 2025); *Scarlett v. Future US, LLC*, CGC-25-621912, 2025 Cal. Super. LEXIS 56166, at *11-14 (S.F. Co. Super. Ct. Sept. 5, 2025); *Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745, at *10-15 (N.D. Cal. Sep. 2, 2025); *Valenzuela v. Intersystems Corp.*, 2025 Cal. Super. LEXIS 42550, at *3-4

(Orange Co. Superior Ct. Aug. 4, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075, 1093-1094 (N.D. Cal. July 18, 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *30-32 (N.D. Cal. July 14, 2025); *Price v. Headspace, Inc.*, 2025 Cal. Super. LEXIS 27951, at *3-9 (L.A. Super Ct. Apr. 1, 2025); *Sanchez v. Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460, at *8-9 (L.A. Super. Ct. Feb. 28, 2025); *Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076, at *8 (C.D. Cal. Feb. 3, 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246, at *16 (C.D. Cal. Apr. 3, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-931 (N.D. Cal. October 21, 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076-1077 (C.D. Cal. July 25, 2024). This is because the plain wording of the sections is unambiguously broad, encompassing internet technology, software and websites.

Most of the decisions cited directly above reject the contention, advanced by Defendant, that § 638.51 applies to "telephone surveillance devices, not websites[,]" Mot. (ECF No. 16) at 8:3-4; 18:4-23. *See, e.g., Samba TV*, 2026 LX 187347, at *21; *MyFitnessPal*, 2026 U.S. Dist. LEXIS 15193, at *22-23; *C2 Educ. Sys.*, 742 F. Supp. 3d at 1076; *Fandom, Inc.*, 754 F. Supp. 3d at 930.

Defendant's contention that Plaintiff's visit to the Website was "bare," and therefore no trap and trace device could have operated upon him, lacks authority and should be rejected. In the first place, the Complaint does not allege a "bare" visit. The Complaint does not say that Plaintiff landed on the Website's homepage and then immediately left the site. As this is a motion under Fed. R. Civ. P 12(b)(6), the Court is to draw any inferences in the pleading party's favor, not against it. *See, e.g. Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014); *United States v. Plains All Am. Pipeline L.P.,* No. 2:26-cv-05242-SVW-SSC, 2026 LX 427245, at *69 (C.D. Cal. Aug. 19, 2026) (in assessing a Rule 12(b)(6) motion, a court "must [ . . . ]draw all reasonable inferences in favor of the nonmoving party.")

Second, Defendant's reliance on *Daghaly v. Bloomingdales.com, LLC*, No. 23-4122, 2024 U.S. App. LEXIS 31929 (9th Cir. Dec. 17, 2024), and unpublished opinion that is not binding on the Court, in this regard, is misplaced. *Daghaly* was filed under California's interception statute, Cal. Penal Code § 631(a). In light of this fact, *Daghaly*'s discussion of the minimal nature of the plaintiff's visit to Bloomingdale's website was relevant only to the question of whether any "contents" of plaintiff's "communication" with the website had been transmitted to a third party. The interception of such ***contents*** are required to establish a violation of § 631(a), but not a violation of § 638.51.

In short, the LiveRamp code Plaintiff alleges was operating on the Website during his October 2025 visit transmits precisely the type of information to a data broker like LiveRamp uses to identify the source of an electronic communication.

**2. The Complaint States a Claim For Intrusion Upon Seclusion.**

The Complaint alleges that Plaintiff had an expectation of privacy in his interactions with the Website. Further, it alleges that the LiveRamp code defeats that expectation and intrudes upon those interactions in a manner that would be considered highly offensive to a reasonable person and an egregious breach of contemporary social norms. This is because deployment of the LiveRamp code leads to the creation or enhancement of extensive profiling of visitors for sale, and the ongoing tracking of their activities on the internet, covering a large number of websites.

Deployment of tracking software that engages in the type of identification, profiling and tracking carried out by the LiveRamp code that Defendant installed on the Website forms the basis of an actionable intrusion upon seclusion claim under California law. *See, e.g., Caldwell v. InMobi Pte., Ltd.*, No. 25-cv-09977-AMO, 2026 LX 229530, at *7-14 (N.D. Cal. Apr. 29, 2026); *Six Flags Ent. Corp.*, 812 F. Supp. 3d at 1029-1030; *OpenX Techs*, 817 F. Supp. 3d at 864-65; *Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 U.S. Dist. LEXIS 205538, at *8 (N.D. Cal. Oct. 16, 2025). These cases found that plaintiffs had a reasonable expectation of privacy that their visits to commercial websites would ***not*** give rise to ongoing, pervasive tracking and profiling of them, capturing all sorts

of information based on their activity on the website, but also on other websites in the future. *See, e.g., OpenX Techs*, 817 F. Supp. 3d at 865 (finding reasonable expectation of privacy where the defendant "allegedly track[ed], compile[d], and s[old] massive amounts of information on plaintiffs, without their knowledge that [a] pixel [created by defendant] has been loaded onto a given website"); *Six Flags Ent. Corp.*, 812 F. Supp. 3d at 1030 (similar).

Moreover, the determination of whether the intrusion by the LiveRamp code on the Website would be highly offensive to a reasonable person can rarely be decided as a matter of law, as opposed to a question of fact; therefore courts typically refuse to make such a determination on a pleading challenge. *See, e.g., OpenX Techs*, U.S. 817 F. Supp. 3d at 864-65 ("courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is") (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)).

Defendant's arguments on Plaintiff's intrusion claim are unavailing. First, Plaintiff is alleging that Defendant ***caused*** an intrusion upon seclusion ***by LiveRamp*** by installing the LiveRamp code on its Website. *See Six Flags Ent. Corp.*, 812 F. Supp. 3d at 1029-30 (denying a motion to dismiss an intrusion upon seclusion claim against website operator defendant Six Flags, based on its installation and use of "third-party cookies" – the equivalent of tracking software like the LiveRamp code). The Complaint is clear that by installing and deploying the LiveRamp code, ***Defendant caused LiveRamp*** to receive data about Plaintiff's visit to the Website, and data that could identify Plaintiff, thereby allowing LiveRamp to intrude upon Plaintiff's communication with the Website/Teleflora. *See* Cplt. (ECF No. 1), ¶¶ 19, 21, 79. At worst, Plaintiff has failed to plead the intrusion upon seclusion claim under an aiding and abetting theory of liability – something that easily can be remedied by amending the Complaint to add a paragraph.

Second, that Plaintiff has not alleged that any specific piece of substantive information about him was transmitted to LiveRamp that was embarrassing, invasive or otherwise private, does not defeat his intrusion on seclusion claim. As the Complaint

asserts, the behavioral profiling and ongoing tracking of his internet browsing initiated by the LiveRamp code Defendant installed and deploys, is "highly offensive" under the reasoning of the *InMobi*, *Six Flags*, *OpenX Techs* and *Sovrn Holdings* decisions cited *supra*.

Teleflora simply ignores the allegations of the Complaint about such profiling and tracking. It improperly recasts them as ones asserting only that data points like browser type and operating system, or even the fact that Plaintiff visited the Website on October 1, 2025, were transmitted to LiveRamp. Defendant's approach would thus require the Court to depart from the legal standard under which it must review this Motion under Fed. R. Civ. P. 12(b)(6). Neither Defendant nor the Court are empowered to rewrite Plaintiff's allegations in a manner that supports dismissal.

Further, the Complaint contains citations to news sources and government filings that establish the ability of tracking software to identify website visitors and initiate ongoing tracking of individuals across devices and websites. Accordingly, the Court should reject any arguments advanced by Defendant that the Complaint's allegations about tracking and profiling of individuals are either too conclusory, or insufficiently detailed, to be accepted for purposes of Teleflora's contention that Plaintiff has failed to state a claim for intrusion upon seclusion.

## V. CONCLUSION

For the reasons stated herein, the Court should deny Defendant's Motion to Dismiss the Complaint in its entirety.

DATED: August 24, 2026

**TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

*Attorneys for Plaintiff Lawrence Schallert*

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Lawrence Schallert, certifies that this brief is 5,710 words, which complies with word limit set by L.R. 11-6.1.

DATED: August 24, 2026

**TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

*Attorneys for Plaintiff Lawrence Schallert*