KRISTINA M. DIAZ (SBN 151566)
Kristina.Diaz@roll.com
NANCY FRANCO (SBN 294856)
Nancy.Franco@roll.com
RHONDA STEFFEN (SBN 220490)
Rhonda.Steffen@roll.com
LAUREN FISHELMAN (SBN 317601)
Lauren.Fishelman@roll.com
ISABELLE VIDRO (SBN 324273)
Isabelle.Vidro@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone: (310) 966-8400
Facsimile: (310) 966-8810

Attorneys for Defendant
TELEFLORA LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| LAWRENCE SCHALLERT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TELEFLORA LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. 2:26-cv-06268-CAS (BFMx)<br><br>[Assigned to the Hon. Christina A. Snyder]<br><br>**DEFENDANT TELEFLORA LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**Date: September 14, 2026**<br>**Time: 10:00 a.m.**<br>**Crtrm.: 8D**<br><br>Complaint Filed: June 9, 2026<br>Trial Date: None Set |

{3633682}

# TABLE OF CONTENTS

**Page**


MEMORANDUM OF POINTS AND AUTHORITIES....6

I. INTRODUCTION....6

II. ARGUMENT....8

A. Plaintiff Lacks Article III Standing....8

1. Plaintiff Fails To Allege A Particularized Injury....8

2. Plaintiff Fails to Allege Concrete Harm....11

3. Plaintiff, a Serial Tester, Lacks Standing....15

4. Plaintiff Lacks Standing to Seek Injunctive Relief....16

B. The Trap And Trace Claim Is Incurable....17

C. Plaintiff Concedes the Intrusion Upon Seclusion Claim Is Deficient....18

D. Leave to Amend Would Be Futile....19

III. CONCLUSION....21

# TABLE OF AUTHORITIES


**Page**

**CASES**

*Ashcroft v. Iqbal*
556 U.S. 662, 664, 129 S. Ct. 1937, 1940 (2009) .......... 11

*Byars v. Sterling Jewelers, Inc.*
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 15

*Cantu v. Nintendo of Am., Inc.*
No. 2:26-cv-01520-SPG-CTS, 2026 U.S. Dist. LEXIS 185474 (C.D. Cal. Aug. 17, 2026) .......... 15

*Casillas v. Six Flags Ent. Corp.*
812 F. Supp. 3d 1016, 1033 (C.D. Cal. 2025) .......... 13

*Dellasala v. Samba TV, Inc.*
No. 3:25-CV-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) .......... 13

*Gabrielli v. Haleon US Inc.*
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 9

*In re Facebook, Inc. Internet Tracking Litigation*
956 F.3d 589 (9th Cir. 2020) .......... 6, 12

*In re: Google Inc. Cookie Placement Consumer Priv. Litig.*
934 F.3d 316 (3d Cir. 2019) .......... 13, 14

*Jones v. Skullcandy, Inc.*
No. 25-CV-1759 JLS (BLM), 2026 WL 699819 (S.D. Cal. Mar. 12, 2026) .......... 10

*Mount v. PulsePoint, Inc.*
684 F. App'x 32 (2d Cir. 2017), *as amended* (May 3, 2017) .......... 13, 14

*Pemberton v. Rest. Brands Int'l, Inc.*
No. 25-CV-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) .......... 10

*Popa v. Microsoft Corp.*
153 F.4th 784 (9th Cir. 2025) .......... passim

*Price v. Converse, Inc.*
805 F.Supp.3d 1102, 1105 (C.D. Cal. 2025) .......... 12

*Rodriguez v. Autotrader.com, Inc.*
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......... 15, 19

*Rodriguez v. Brushfire Records*
No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) .......... 6, 10, 15

*Saedi v. SPD Swiss Precision Diagnostics GmbH*
No. 2:24-CV-06525-WLH-E, 2025 WL 1141168
(C.D. Cal. Feb. 27, 2025) .......... 19

*Schallert v. Laird Superfood, Inc.*
No. 2:25-CV-12407-SPG-PVC, 2026 WL 1707585
(C.D. Cal. June 5, 2026) .......... 9, 18, 19

*Schallert v. Orkin LLC*
No. 24STCV31244, 2025 WL 4332757 (Cal.Super. Dec. 15, 2025) .......... 17

*Schallert v. Palo Alto Networks, Inc.*
No. 25STCV17109, 2026 WL 754028 (Cal.Super. Mar. 06, 2026) .......... 18, 20

*Shah v. MyFitnessPal, Inc.*
824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) .......... 13

*Shah v. Politico LLC*
No. 25-CV-05213-NW, 2026 WL 323269 (N.D. Cal. Feb. 6, 2026) .......... 16

*Steinmeyer v. Am. Ass'n of Blood Banks*
715 F. Supp. 3d 1302 (S.D. Cal. 2024) .......... 10

*Torres v. Seatgeek, Inc.*
2026 WL 1495202 (N.D. Cal. May 28, 2026) .......... 18

*TransUnion LLC v. Ramirez*
594 U.S. 413, 423, 141 S. Ct. 2190, 2203 (2021) .......... 8, 11, 12, 14

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*
489 U.S. 749, 764, 109 S. Ct. 1468, 1477 (1989) .......... 14

*Walsh v. Dollar Tree Stores, Inc.*
No. 25-CV-01601-SVK, 2025 WL 2939229
(N.D. Cal. Oct. 16, 2025) .......... 13

*Wendy Blalock v. FCA US, LLC*, et al.
No. SA CV 26-201-DMG (KESX), 2026 WL 2364789
(C.D. Cal. Aug. 14, 2026) .......... 8, 9, 11, 12

**STATUTES**

Cal. Penal Code § 631(a) .......... 20

Cal. Penal Code § 637.2(d)(1) .......... 17

Cal. Penal Code § 638.50(c) .......... 7, 17, 18

Cal. Penal Code § 638.51 .......... 7, 17, 20

Cal. Penal Code § 638.52(c) .......... 17

Cal. Penal Code § 638.52(d) .......... 17

**OTHER AUTHORITIES**

SB 690: *Crimes: invasion of privacy, Digital Democracy, CalMatters, https://calmatters.digitaldemocracy.org/bills/ca_202520260sb690 (last visited August 31, 2026.)* ....7, 17, 20

U.S. Const. Art. III....6, 8, 12

**RULES**

Fed. R. Civ. P. 12(b)(1) ....6

Fed. R. Civ. P. 12(b)(6) ....7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Opposition never answers the question that matters: what actually happened to this Plaintiff? Instead, Plaintiff Lawrence Schallert ("Plaintiff") relies on generalized allegations about what nonparty LiveRamp is supposedly *capable* of doing, to fill the gaps in what the Complaint alleges *actually happened* to him. Plaintiff alleges, based on generic marketing materials and news articles, that LiveRamp can identify website visitors, create behavioral profiles, track users across websites and devices, and sell their information. Yet Plaintiff does not allege that LiveRamp actually did any of those things to him here. He does not identify any private or sensitive information LiveRamp obtained about him, any behavioral profile it created or enhanced about him, or any website on which it tracked him after he left Defendant Teleflora LLC's ("Teleflora") Website. Those omissions are fatal to Plaintiff's claims. This Court recently dismissed similarly vague claims because the plaintiff alleged what the technology was capable of doing, rather than what the technology actually did to her. *See Rodriguez v. Brushfire Records*, No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (Snyder, J.). Plaintiff's Complaint fares no better.

The Complaint should be dismissed under Rule 12(b)(1) because Plaintiff fails to allege an injury in fact sufficient to establish Article III standing. Under *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), Article III standing turns on the particular circumstances of Plaintiff's alleged injury, not the capabilities of the technology at issue. Plaintiff cannot establish a concrete privacy injury based on speculation about what LiveRamp might have done with information theoretically transmitted during his visit to Teleflora's website. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), on which Plaintiff heavily relies, only underscores the deficiencies here: in *Facebook*, the plaintiffs alleged Facebook tracked them after they logged out, compiled their personally identifiable browsing

histories "no matter how sensitive," correlated that data with personal profiles to build comprehensive user dossiers, and sold the resulting profiles to advertisers - all in violation of Facebook's affirmative misrepresentations that logged-out user data would not be collected. *Id*. at 598-99. Plaintiff alleges no comparable facts here. Plaintiff allegedly visited Teleflora's flower-delivery website once, and alleges no post-visit tracking of him across other websites, no affirmative misrepresentations by Teleflora about data collection, no sensitive content actually captured from him, and no profile of him actually created or sold by nonparty LiveRamp.

The Complaint should also be dismissed under Rule 12(b)(6) for failure to state a claim. The Complaint does not allege facts showing that the LiveRamp code operated as a "trap and trace device" within the meaning of California Penal Code section 638.50(c) during Plaintiff's visit. The Opposition also concedes a fundamental defect in Plaintiff's intrusion upon seclusion claim: the alleged intrusion was "***by LiveRamp*** - not by Teleflora itself." Opposition ("Opp.") 8:3-5 (emphasis in original). Plaintiff now attempts to recast his claim as one based on Teleflora "aiding and abetting" LiveRamp's alleged intrusion (*id*. at 8:8-10), but that theory is not in the Complaint and leave to amend to add it would be futile.

The California Legislature agrees. On August 28, 2026, ***both houses unanimously passed Senate Bill 690, which eliminates the private right of action for Section 638.51 claims*** and reserves enforcement exclusively for the Attorney General.[1] The bill applies retroactively to pending claims filed within two years before its operative date, ***including this case***. SB 690 now awaits the Governor's signature, with a deadline of September 9, 2026. The Legislature acted in direct response to the explosion of cookie-cutter Section 638.51 lawsuits like this one -

---

[1] *SB 690: Crimes: invasion of privacy*, Digital Democracy, CalMatters, https://calmatters.digitaldemocracy.org/bills/ca_202520260sb690 (last visited August 31, 2026.).

from 600 to over 4,000 in roughly one year - driven by a small number of firms and repeat plaintiffs. The Court need not wait for the Governor's pen to recognize what the Legislature has already determined: private Section 638.51 claims targeting ordinary website technology are not encompassed by the statute and are, instead, an abuse thereof.

The Court should grant the Motion and dismiss the Complaint with prejudice.

## II. ARGUMENT

### A. Plaintiff Lacks Article III Standing

Plaintiff does not satisfy his burden of establishing standing under Article III. *See Wendy Blalock v. FCA US, LLC*, et al., No. SA CV 26-201-DMG (KESX), 2026 WL 2364789, at *2 (C.D. Cal. Aug. 14, 2026) ("The plaintiff bears the burden of demonstrating standing."). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203 (2021).

#### 1. Plaintiff Fails To Allege A Particularized Injury

Plaintiff cannot establish Article III standing based on the alleged capabilities of LiveRamp's technology alone. *Id*. at 423. ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."). Plaintiff alleges that third-party LiveRamp was "enabled" to "compile a profile on Plaintiff" that LiveRamp could "perhaps" sell. Opp. 7:5-7. Plaintiff characterizes his alleged "loss of control" over unspecified information, the diminution in the "value" of the unidentified data, and potential behavioral profiling by LiveRamp as particularized injuries. Opp. 12:14-21. Yet Plaintiff's alleged injuries remain abstract and speculative. He fails to allege what actually happened to him during his visit to the Website, including for example: (a) what specific data was captured from his device; (b) what personal information, if any, he provided to Teleflora's Website; (c) any action he took on the

Website beyond opening the webpage; (d) that he was actually identified, profiled, or tracked; (e) that he suffered any actual harm as a result of his visit; or (f) any facts from which the Court could infer a particularized injury. That failure is dispositive. *See Schallert v. Laird Superfood, Inc.*, No. 2:25-CV-12407-SPG-PVC, 2026 WL 1707585, at *5 (C.D. Cal. June 5, 2026) (dismissing this same Plaintiff's identical allegations, as they described what a website *could* capture, not what it *did* capture from him).

Just two weeks ago, Plaintiff's own counsel pressed these same LiveRamp-based claims against another website operator in this district and the Court dismissed the claims for lack of standing. In *Blalock*, 2026 WL 2364789, at *1, the plaintiff alleged the defendant embedded LiveRamp tracking software on its website that LiveRamp could use to create or enhance user profiles and "to support targeting far beyond the context of the Website visit." *Id*. at *1. The plaintiff did not allege that she had an existing "RampID" when she visited the defendant's website or facts that would lead to the reasonable inference that her identity was revealed through her activity on the website. *Id*. at *4. The Court found "the disclosure of sensitive information - plaintiff's identity - [was] too far attenuated from the chain of speculative events set forth in the FAC." *Id*. (citing *Schallert v. Laird Superfood,* 2026 WL 1707585, at *5 ("finding plaintiff lacked a concrete injury where he failed to allege what specific information the website captured from him")). The Court further observed that the other non-identifying visitor data (*e.g.,* browser and router information) allegedly collected by the tracking code "would be insufficient to give rise to a concrete injury" because it "does not identify or otherwise disclose a Website user's private information in a 'highly offensive' way." *Id*. at *4. The Court also found the injury was not traceable to actions of the defendant website operator because the plaintiff did not allege any facts showing a connection between LiveRamp's de-anonymization process and the defendant, and the assertion of "commercial value" to the defendant was "vague and conclusory." *Id*. at *5. Here,

the Complaint suffers the same fatal gaps: Plaintiff does not allege he had a pre-existing RampID, that LiveRamp actually obtained information from his bare visit to Teleflora's Website, that his identity was ever de-anonymized, or any facts connecting LiveRamp's purported independent conduct to Teleflora.

The district court decisions Plaintiff cites are likewise unavailing. Each involved materially more specific allegations than those present here. *See, e.g., Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) (plaintiff alleged he had expressly rejected all cookies on defendant's healthcare websites, but defendant installed cookies anyway); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-CV-03647-JSC, 2025 WL 3268404, at *1-2 (N.D. Cal. Nov. 24, 2025) (plaintiff identified specific categories of personal information allegedly collected despite expressly opting out of cookies and data sharing); *Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 WL 699819, at *4-6 (S.D. Cal. Mar. 12, 2026) (plaintiff specifically alleged collection of detailed browsing histories, purchase behavior, personally identifiable information, account identifiers, real-time behavioral data, and demographic and psychographic profiles). Here, by contrast, Plaintiff does not allege that he opted out of anything, that he provided any information, or that tracking continued despite any affirmative step he took to prevent it. Conclusory allegations cannot be converted into a particularized injury by citing cases involving materially more specific pleadings. *See Steinmeyer v. Am. Ass'n of Blood Banks*, 715 F. Supp. 3d 1302, 1318 (S.D. Cal. 2024) ("Plaintiff cannot establish constitutional standing based on conclusory statements").

This Court's recent decision in *Brushfire Recs.*, 2025 WL 3692144, is instructive. There, this Court dismissed similar CIPA and invasion of privacy claims for lack of Article III standing. *Id.* at *8. Similar to this case, there, the plaintiff's "only allegation about her own interactions with defendant's website is that she visited the website in the last year," while "[t]he remainder of the FAC [was] filled with vague and generalized allegations of the type of data that the [third-party data

broker] tracking pixel is capable of collecting from website visitors." *Id*. at *7. The Court found the plaintiff's status as a tester casted doubt on any suggestion that she had a reasonable expectation of privacy on the defendant's website. *Id* at *6. Further, the Court held the plaintiff's "bare allegation that she visited Defendant's website is insufficient to establish injury in fact, and therefore insufficient to establish standing." *Id*. at *7. "[W]ithout any allegations as to what of plaintiff's personal information, beyond her IP address, was collected by defendant, the Court cannot identify any harm to her privacy, much less identify a highly offensive intrusion." *Id*. Accordingly, the Court granted the defendant's motion to dismiss. *Id*. at *8. Here, the Court should do the same.

**2. Plaintiff Fails to Allege Concrete Harm**

As a threshold matter, Plaintiff's admission that the conduct complained of was caused by LiveRamp, not Teleflora, is dispositive. Opp. 8:3-5. *See TransUnion*, 594 U.S. at 423 ("If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'").

Plaintiff's only allegation about his interactions with Teleflora's Website is a bare visit on October 1, 2025. Opp. 6:19. This is insufficient to establish standing. Plaintiff argues the Complaint does not allege a "bare" visit because "[t]he Complaint does not say that Plaintiff landed on the Website's homepage and then immediately left the site," and the Court must draw inferences in Plaintiff's favor. Opp. 19:21-28. The duration of Plaintiff's visit is irrelevant; lingering on a website does not manufacture standing where no concrete harm is alleged. The Court's obligation to draw reasonable inferences does not permit it to supply facts the Complaint omits. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940 (2009) ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth."). The Complaint is still devoid of any allegation that Plaintiff

suffered a concrete, real-world harm of the kind that would have been actionable at common law. *See Price v. Converse, Inc.*, 805 F.Supp.3d 1102, 1105 (C.D. Cal. 2025) (finding allegations of data collection via website tracking technology insufficient to establish a concrete injury-in-fact). No reasonable inference can fill those gaps.

"*TransUnion* and *Popa* have made clear that plaintiffs cannot rely upon a general freestanding 'right to privacy' without more." *Blalock*, 2026 WL 2364789, at *3 (granting motion to dismiss for lack of standing). "Instead, the Court must address whether the plaintiff's alleged harms 'hold a close relationship to' traditionally recognized harms." *Id*. Plaintiff's effort to distinguish *Popa* as involving session replay technology misses the point. Opp. 16:12-17. *Popa* addressed whether the plaintiff alleged a concrete injury sufficient to support Article III standing, not a software-specific exception. *Popa*, 153 F.4th at 788-89 ("Article III standing requires a concrete injury even in the context of a statutory violation."). There, although the defendant allegedly collected information concerning the plaintiff's interactions with the website, the plaintiff did not identify any "embarrassing, invasive, or otherwise private information" collected by the defendant and the court analogized the alleged monitoring to "a store clerk's observing shoppers." *Id*. at 791. The allegations therefore did not establish harm sufficiently analogous to the "highly offensive" interferences or disclosures actionable at common law. *Id*.

Critically, *Popa* explained that, despite the broad statements made therein, *In re Facebook, Inc.* "accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries" and did not "greenlight[] a per se rule for privacy statutes." *Popa*, 153 F.4th at 794; *see also Blalock*, 2026 WL 2364789, at *3 ("The sensitivity of the information at issue is also relevant in determining whether the plaintiff has adequately pleaded Article III injury."). The decisions turn on the particular privacy invasion alleged, including the nature of the information

collected, the breadth and duration of the alleged tracking, the extent of any aggregation or dissemination, and whether these circumstances amount to a concrete harm bearing the requisite relationship to a traditionally recognized privacy injury.

*In re Facebook* held the plaintiffs had standing because they alleged that Facebook compiled a cross-site, "cradle-to-grave," personally identifiable browsing profile for them, despite Facebook's affirmative representations that logged-out user data would not be collected and such data was collected no matter how sensitive or personal users' browsing histories were. 956 F. 3d at 598-99. None of those circumstances exists here. Plaintiff alleges only that he visited Teleflora's publicly available floral-delivery Website once and "data that reasonably, likely identified him were transmitted to" a third party, but does not allege any purchase, text entry, or any other action beyond simply opening the Website. Compl. at ¶¶ 19, 42.

Plaintiff's cited district court decisions do not establish otherwise. None of those decisions hold that a plaintiff may establish Article III standing merely by describing the theoretically invasive *capabilities* of tracking software without adequately alleging a concrete privacy invasion actually suffered by that plaintiff. Opp. 16:8-11. Rather, those cases involved materially different allegations concerning the nature of the information actually collected, the extent of the tracking actually conducted, the creation or dissemination of detailed user data, or some combination of those circumstances.[2]

[2] *See, e.g., Dellasala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2026 WL 1138358, at *2 (N.D. Cal. Apr. 21, 2026) (defendant collected detailed video-viewing data from consumers and sold it to third parties); *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) (specific allegations of third parties actually obtaining plaintiffs' sensitive nutrition and fitness data, even after users opted out); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1033 (C.D. Cal. 2025) (specific allegations that personal information was tracked, including search queries, products searched for, user interests, and browsing habits); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-CV-01601-SVK, 2025 WL 2939229, at *2 (N.D. Cal. Oct. 16, 2025) (plaintiffs expressly rejected advertising cookies, yet the defendant placed

Plaintiff's out-of-circuit authority fares no better. Plaintiff relies on two pre-*Transunion*, out-of-circuit decisions: the Second Circuit's unpublished decision in *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017), *as amended* (May 3, 2017) and the Third Circuit's decision in *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019), for the proposition that cross-site tracking and profiling constitute a concrete injury. Opp. 14:10-17. Neither decision is binding on this Court, and both predate *TransUnion*, in which the Supreme Court held "[n]o concrete harm, no standing." *TransUnion*, 594 U.S. at 417. Moreover, these cases presented materially different allegations than those here: each found standing where the defendant actively circumvented the plaintiffs' browser privacy settings. *Mount* involved overriding a cookie-blocker to install cookies on plaintiffs' computers. *Mount*, 684 F. App'x at 36. *In re: Google Inc.* involved bypassing Safari and Internet Explorer privacy settings to track the plaintiffs, in violation of Google's promise not to do so (*In re: Google Inc.*, 934 F.3d at 321-25). Here, Plaintiff does not allege that he enabled any privacy setting or that any choice of his was overridden.

Plaintiff also cannot establish a concrete injury merely by labeling the hypothetical transmission of unspecified information to LiveRamp a "loss of control." Opp. 12:15. *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 764, 109 S. Ct. 1468, 1477 (1989) does not establish that a "loss of control over information" constitutes a "concrete injury" sufficient to confer standing. Opp. 15:14-17. Indeed, *Reps. Comm.* was not an Article III standing case; it considered whether the disclosure of FBI-compiled criminal identification records to third parties could reasonably constitute an invasion of privacy within the meaning of the Freedom of Information Act. *Reps. Comm.*, 489 U.S. at 751.

---

them anyway and collected browsing history, website interactions, user input data, and demographic information).

### 3. Plaintiff, a Serial Tester, Lacks Standing

Plaintiff has filed at least ***forty-one substantially identical complaints*** asserting the same legal theory against different website operators. *See* Request for Judicial Notice. As discussed in the Motion, Courts routinely dismiss claims brought by tester plaintiffs who lack a reasonable expectation of privacy when visiting a defendant's website. *See, e.g., Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) ("as a tester that visited and entered information into Defendant's website expecting the information to be accessed, recorded, and disclosed, she cannot claim an injury when her expectations were ultimately met"); *accord Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023).

The Opposition incorrectly argues "the Court may only draw from any complaints it decides to judicially notice that Plaintiff has filed a certain number of actions based on allegations of CIPA violations." Opp. 17:7-11. The Court can draw far more than that. Over forty-one substantially similar complaints, filed within twenty months, including multiple complaints filed on the same day, against websites ranging from college sports recruiting to pest control, cast doubt on any reasonable expectation of privacy here. The Opposition's own authority confirms the point. *See Brushfire Recs.*, 2025 WL 3692144, at *6 (finding plaintiff's status as a tester "'casts doubt on any suggestion that she was surprised' by defendant's alleged privacy violations").

Plaintiff's reliance on *Cantu v. Nintendo of Am., Inc.*, No. 2:26-cv-01520-SPG-CTS, 2026 U.S. Dist. LEXIS 185474, at *1 (C.D. Cal. Aug. 17, 2026) undercuts his position. There, the Court found the plaintiff's status as a tester "cast doubt as to whether Plaintiff maintained reasonable expectation of privacy when visiting the Website" but, for purposes of the motion to dismiss, the Court accepted as true the plaintiff's allegations that she had a genuine interest in the products, services, and information available on the defendant's website. *Id*. at *9. Yet the

Court dismissed the plaintiff's claims for lack of standing because she failed to allege what specific information was captured and how she interacted with the website. *Id*. at *14-18. Here, Plaintiff falls short on both counts. Plaintiff never alleges a genuine interest in visiting Teleflora's Website to purchase flowers. *See* Complaint. The Opposition reinforces that deficiency. Plaintiff argues only that the Court cannot conclude "that Plaintiff was uninterested in viewing the Website." Opp. 17:23-25. That is not an allegation of genuine interest; it is an admission that the Complaint contains none. The far more plausible inference is that Plaintiff visits websites for the sole purpose of manufacturing claims. Like the plaintiff in *Cantu*, Plaintiff fails to allege the specific information that was purportedly captured and any details about how he interacted with the Website. Accordingly, the Complaint should be dismissed.

*Shah v. Politico LLC*, No. 25-CV-05213-NW, 2026 WL 323269, at *4 (N.D. Cal. Feb. 6, 2026), cited by Plaintiff, is likewise inapposite. Opp. 17:28-18:4. In a single footnote of *dicta*, the court mentioned it was not swayed by the plaintiff having filed a few other lawsuits because the plaintiff had sufficiently identified the specific personal information disclosed that implicated a protectable privacy interest and an invasion of a legally protected right. *Id*. at *3. There, the plaintiff had opted out of "certain tracking cookies upon entering the Politico site, giving rise to an expectation of privacy" but the data was nonetheless collected. *Id*. at *4. Here, Plaintiff does not allege that he opted out of anything, that any privacy preference was ignored, or that any specific personal information was disclosed. *See* Complaint.

**4. Plaintiff Lacks Standing to Seek Injunctive Relief**

The Opposition does not address Teleflora's argument that Plaintiff lacks standing to seek injunctive relief. Mot. 17:5-26. Plaintiff alleges a single visit to the Website on October 1, 2025, and does not allege any intent to return or any threat of future injury. *See* Compl. ¶ 19. The argument is conceded and the request for

injunctive relief should be dismissed.

### B. The Trap And Trace Claim Is Incurable

On August 28, 2026, both houses of the California Legislature unanimously passed Senate Bill 690, eliminating the private right of action for Section 638.51 claims arising from conduct on websites and reserving enforcement to the Attorney General. Cal. Penal Code § 637.2(d)(1) (as amended by SB 690). The bill applies retroactively to pending claims filed within two years before its operative date – which includes this lawsuit, filed June 9, 2026. The Legislature acted after the number of Section 638.51 lawsuits surged from roughly 600 to over 4,000, driven largely by repeat plaintiffs and a handful of law firms. SB 690 awaits the Governor's signature, with a deadline of September 9, 2026: five days before the hearing on this Motion.

Section 638.51 regulates "trap and trace devices" - a term the statute defines by reference to telephone surveillance - and does not apply to websites. Plaintiff relies on the breadth of Section 638.50(c)'s definition, but ignores the telephone-specific provisions of Section 638.52 that anchor Teleflora's statutory construction argument. Sections 638.51 and 638.52 regulate the installation and use of trap and trace devices through a court-order process that repeatedly refers to a "telephone number" and the "telephone line to which the pen register or trap and trace device is to be attached." Cal. Penal Code § 638.52(c), (d). Rather than engage with this statutory structure, the Opposition asserts only that the statute is "unambiguously broad." Opp. 19:11-13. Nor does Plaintiff address the decisions rejecting this same Plaintiff's theory after examining the text, structure, and legislative history. *See Schallert v. Orkin LLC*, No. 24STCV31244, 2025 WL 4332757, at *4 (Cal.Super. Dec. 15, 2025) ("[n]owhere in that history is there any indication, whatsoever, that the Legislature as a whole, any member of the Legislature, or any third party, intended 'trap and trace' devices. . . to apply to website tracking software"); *see also Schallert v. Palo Alto Networks, Inc.*, No. 25STCV17109, 2026 WL 754028, at *1

(Cal.Super. Mar. 06, 2026) (rejecting this same Plaintiff's theory, holding "the deployment of software on a website does not constitute a trap and trace device within the meaning of CIPA"). Plaintiff cites a string of trial-court orders without parentheticals or analysis explaining how any of them addressed the statutory arguments raised in the Motion. Opp. 18:14-19:11. None of those cases displace the reasoned analysis in *Orkin* and *Palo Alto Networks*.

Even under Plaintiff's expansive reading, the Complaint does not plead the statutory elements. *See* Cal. Penal Code § 638.50(c) ("'Trap and trace device' means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication"). At most, Plaintiff alleges the LiveRamp code collected his "routing, addressing, and signaling information." Complaint, ¶¶ 65-68. That is mere "record information" - a conclusory recitation of the statutory definition that does not establish the LiveRamp code operated as a "trap and trace device" during Plaintiff's visit to Teleflora's Website. *See Schallert v. Laird Superfood*, 2026 WL 1707585, at *5 ("Plaintiff's allegation that the website took his 'routing, addressing, and signaling information' is conclusory, parroting the language of the statutory definition of a 'trap and trace device' without providing any detail about Plaintiff's actual injury."). The claim should be dismissed.

**C. Plaintiff Concedes the Intrusion Upon Seclusion Claim Is Deficient**

Plaintiff's Opposition effectively concedes that the Complaint does not adequately plead a claim for intrusion upon seclusion. Plaintiff now says the alleged intrusion was committed "***by LiveRamp*** - not by Teleflora itself." Opp. 8:3-5. Plaintiff requests leave to amend to add an aiding-and-abetting theory of liability. Opp. 8:3-10; 21:23-25. A request to plead an entirely different theory confirms the current pleading does not state a claim.

Even setting that aside, the claim fails on the merits. First, Plaintiff has no

objectively reasonable expectation of privacy in routine technical data that his browser automatically discloses to every public website he visits. Plaintiff does not allege that he clicked on any product descriptions, placed an order, or provided the Website with any personal information. *See* Complaint. The notion that a single, non-interactive visit to a publicly available flower delivery website gives rise to a privacy intrusion is nonsensical.

Second, the collection of non-sensitive browsing data is not "highly offensive" as a matter of law. *See Popa*, 153 F.4th at 791; *see also Torres v. Seatgeek, Inc.*, 2026 WL 1495202, at *3-5 (N.D. Cal. May 28, 2026) (collection of IP address and browsing data that enabled tracking across websites and de-anonymization did not amount to highly offensive disclosure). These decisions foreclose Plaintiff's assertion that the "highly offensive" inquiry must always await factual development where the alleged conduct falls within what courts have already held is not offensive as a matter of law. Opp. 8:13-15.

Third, Teleflora cannot "intrude" upon communications Plaintiff voluntarily directed to Teleflora's own Website. *See Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025) ("one cannot logically intrude into communications to which they are a party").

**D. Leave to Amend Would Be Futile**

Dismissal should be with prejudice because leave to amend is futile. Forty-one similar complaints negate any reasonable expectation of privacy, and no repleading can change that. *Autotrader*, 2025 WL 1085787, at *1-2. Plaintiff's failure to allege what actually happened to him, as opposed to what the LiveRamp code is theoretically capable of, leaves the Complaint without a particularized or concrete injury, and it is the same deficiency that has doomed other complaints. *See Schallert v. Laird Superfood,* 2026 WL 1707585, at *5 (dismissing this same Plaintiff's materially identical allegations). The trap and trace claim is legally

deficient and no factual allegation can remedy that deficiency. *See Schallert v. Palo Alto Networks*, 2026 WL 754028, at *3 (dismissing this same Plaintiff's theory without leave to amend because "no set of facts could be alleged to transform the defendant's website code into a trap and trace device"). The intrusion upon seclusion claim is equally incurable: *Popa* holds that routine browsing data is not subject to a reasonable expectation of privacy and its collection is not "highly offensive" as a matter of law. 153 F.4th at 791. Plaintiff's request for leave to amend to add an aiding-and-abetting theory (Opp. 8:3-10) does not change the analysis because the underlying elements of the tort are not met.

Senate Bill 690, which passed both houses of the California Legislature on August 28, 2026 and awaits the Governor's signature, confirms that amendment would be futile. The bill eliminates the private right of action for Section 638.51 claims arising from the use of websites and reserves enforcement exclusively to the Attorney General. SB 690 applies retroactively to any action filed within two years of its effective date of January 1, 2027, which includes this action, filed June 9, 2026. Once signed, Plaintiff will have no private cause of action under Section 638.51, and no amendment to the Complaint can change that result.

Nor could Plaintiff salvage his CIPA claim by recasting it under a different statutory section. The Opposition itself forecloses that path. In distinguishing a decision Teleflora cited for lack of standing, the Opposition characterizes it as involving "a different CIPA provision, Cal. Penal Code § 631(a)" - one that requires alleging "***contents of a communication*** had been received by third parties." Opp. 16:23-26 (emphasis in original). The Opposition then declares that "Plaintiff is not required to allege this in this 'trap and trace' action under Cal. Penal Code § 638.51." *Id*. at 16:26-27. That concession forecloses any viable amendment under Section 631. Plaintiff has told the Court that interception of contents is not at issue in this case and that is precisely what Section 631 requires. The Complaint does not allege that any contents were intercepted, the Opposition makes no claim otherwise,

and a single non-interactive visit to a flower-delivery website produces no "contents" to intercept. Leave to amend under any CIPA provision would be futile.

## III. CONCLUSION

For the foregoing reasons, Teleflora respectfully requests the Court to grant its Motion and dismiss the Complaint with prejudice.

DATED: August 31, 2026 ROLL LAW GROUP PC

By: */s/ Nancy Franco*
Nancy Franco
Attorneys for Defendant
TELEFLORA LLC

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Teleflora LLC, certifies that this brief contains 4,982 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 31, 2026 ROLL LAW GROUP PC

By: */s/ Nancy Franco*
Nancy Franco
Attorneys for Defendant
TELEFLORA LLC